**LAW OFFICES OF DOUGLAS J. CAMPION, APC**
Douglas J. Campion, Esq. (SBN 75381)
409 Camino Del Rio South, Suite 303
San Diego, California  92108
Telephone: (619) 299-2091
Facsimile:  (619) 858-0034
Email:  doug@djcampion.com

**GREY LAW GROUP, APC**
Richard E. Grey, Esq. (SBN 157406)
409 Camino Del Rio South, Suite 303
San Diego, CA 92108-3551
Telephone: (619) 543-9300
Facsimile: (6 I 9) 543-9307
Email:  contact@greylawgroup.com

Attorneys for Plaintiff NEI Contracting And
Engineering, Inc. and for Putative Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEI CONTRACTING AND ENGINEERING, INC., on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> HANSON AGGREGATES PACIFIC SOUTHWEST, INC., a Delaware Corporation, HANSON AGGREGATES, INC., LEHIGH HANSON CO., <br><br> Defendants. | Case No. 12-CV-1685 BAS (JLB) <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL** <br><br> Date:          November 17, 2014 <br> Courtroom:  4B <br> Judge:        Hon. Cynthia Bashant <br><br> (No Hearing Required Unless Ordered By The Court) |

## I.   INTRODUCTION AND OVERVIEW OF ARGUMENT

This is a simple and straightforward case.   Plaintiff NEI Contracting and Engineering, Inc., (hereafter "NEI") alleges violation of the California Invasion of Privacy Act, Penal Code §632.7 which prohibits "intentionally record[ing] . . a communication transmitted between . . . a cellular radio telephone and a landline telephone" "without the consent of all parties to [the] communication". Cal. Penal Code § 632.7. [1] *See Brown v. Defender Sec. Co.,* 2012 WL 5308964 (C.D.Cal. 2012). The civil penalties pursuant to Cal. Penal Code § 637.2 for such violation is $5,000 for each act and injunctive relief may be requested. [2] Addressing a similar prohibition in § 632(a) of

---

[1]  Penal Code §632.7 (a):  "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has been convicted previously of a violation of this section or of Section 631, 632, 632.5, 632.6, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."

[2]  Penal Code § 637.2 states:

"(a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:

(1) Five thousand dollars ($5,000).

(2) Three times the amount of actual damages, if any, sustained by the plaintiff.

(b) Any person may, in accordance with Chapter 3 (commencing with Section 225) of Title 7 of Part 2 of the Code of Civil Procedure, bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a)."

(c) It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages.

the same Act, the California Supreme Court stated:

> [T]his provision does not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from *secretly or surreptitiously recording* the conversation, that is, from recording the conversation *without first informing all parties to the conversation that the conversation is being recorded*. If, after being so advised, another party does not wish to participate in the conversation, he or she simply may decline to continue the communication. A business that *adequately advises all parties* to a telephone call, *at the outset of the conversation,* of its intent to record the call would not violate the provision.

*Kearney v. Salomon Smith Barney*, 39 Cal.4th 95 (2006), at 117-118 (emphasis added). [3]

Here it is undisputed that Defendant Hanson Aggregates Pacific Southwest, Inc. ("Hanson" or "Defendant") recorded hundreds of thousands of calls from its customers during the Class Period, July 15, 2009 through December 23, 2013 (the "Class Period"). None of the callers were advised that their calls would be recorded. The only admonition the received was that their calls "may be *monitored* for quality assurance".  Plaintiff submits that such a warning did not adequately warn callers that their calls would be recorded and, therefore, no consent to the recording was given. That is the predominant issue, one that can be answered on a class-wide basis.

Plaintiff's expert determined from the list provided in discovery by Defendant that 436,665 total calls were recorded during the Class Period, but that number included non-Class members calling from landlines, as well as outbound calls made by Defendant. *See*

---

[3] *Kearney* specifically addressed a separate but related provision of the Privacy Act which prohibits non-consensual "eavesdrop[ping] upon or record[ing] the confidential communication." Cal. Penal Code § 632(a).  Significantly, the "confidential communication" requirement is *not* an element of a claim under Pen. Code §632.7. "§ 632 only applies to "confidential communications," whereas § 632.7 contains no comparable limitation." *Brown v. Defender Sec. Co.,* CV 12-7319-CAS PJWX, 2012 WL 5308964 at *5 (C.D. Cal. Oct. 22, 2012)

Declaration of Jeff Hansen in Support of Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Hansen Decl."), ¶ 5 filed herewith.  Of that number of recorded calls, 210,688 were calls made by Class members to Hanson using their cellphones, i.e., inbound calls to Hanson.  *Id*.  Those recorded calls involved 12,551 unique cellphone numbers.  *Id*.  In other words, there are 12,551 Class members with 210,688 claims for having their cellphone calls recorded without consent.

Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(b)(3):

> "All persons who called Defendant with a cellular telephone and selected the Aggregate or Ready Mix Dispatch lines through Defendant's telephone system, whose calls were recorded by Defendant, during the time period beginning July 15, 2009, and continuing through December 23, 2013."

As detailed below, *all callers who called* Hanson's Aggregate Dispatch Line or Ready-Mix Dispatch Line heard a prerecorded message that advised them that their calls would be "monitored" but it did *not* advise that the calls were being *recorded*.  Discovery has shown that all calls to these Dispatch lines were in fact recorded during the Class Period.  *See* Declaration of Douglas J. Campion in Support of Motion for Class Certification, Appointment of Class Representative and Class Counsel ("Campion Decl."), Exhibit A, Deposition of Matthew Woods ("Woods depo") at 47: 21-25, filed herewith.  That prerecorded message stated:

> "Thank you for calling Hanson Aggregate Material [or Ready Mix] Dispatch. *Your call may be monitored for quality assurance.* Our hours of Operation are 6:00AM to 4:00 pm, Monday thru Friday. Please remain on the line and your call will be answered as soon as possible. Thank you for your patience."

> Campion Decl., Exhibit B, Response to Interrogatory No. 6, pp. 9:22-10:6, emphasis added.

Callers to either Dispatch line all heard this same recorded announcement. Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6. And all calls to these

Dispatch lines were recorded by Hanson. The "plain language" of the prerecorded disclosure about "monitoring" – chosen by Defendant – makes no mention that *all* calls would be recorded.

This case is properly suited for class certification under Rule 23. First, the Class is sufficiently numerous and ascertainable. The class definition properly identifies Class members, i.e., those persons whose cellular telephone conversations on calls made to Hanson Dispatch lines were recorded by Defendant during the Class Period. Defendant's records contain the date and phone numbers of each recorded call. This allows identification of those calls made using a cellphone. Hanson has admitted that at least 489,889 telephone calls were recorded from 31,015 unique telephone numbers since July 15, 2009. But that number of recorded calls also included calls from landlines, outbound calls and calls made after the Class Period. Excluding those calls, that number results in a Class of 12,551 persons with unique cellphone numbers and 210,688 recorded phone calls. *See* Hansen Decl. at ¶ 5. Thus, the Class satisfies the numerosity requirement.

Second, a case which is based on uniform prerecorded disclosures which were played without variation to the Class members calling the Defendant's Dispatch lines is easily certifiable as a class action because common questions of fact and law predominate. The underlying issue is whether the recording heard by all of the Class members stating "your call may be monitored for quality assurance" fails to provide adequate notice of the *recording* of the calls, and if so, therefore fails to constitute consent to the recording under Pen. Code § 632.7. Defendant claims that this warning is sufficient and that the "monitoring" warning somehow includes a warning of "recording" as well. Although this issue goes to the merits of the case and should *not* be resolved on a class certification motion, Plaintiff submits the answer to that question will resolve the issues regarding  the only defense available to Hanson (i.e., whether the Class members consented to the recording because they were told the  their calls might be "monitored". )

Whether or not "monitoring" includes and means "recording" as Defendant will assert does not affect this class certification motion as that type of merits issue is not to be examined at the class certification stage, as discussed below. *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013). Furthermore, "monitored" has a plain meaning and the Court should evaluate the efficacy of that warning based upon the plain meaning of what it says. Because all of the Class members heard the exact same words "your call may be monitored" in a prerecorded message, that meaning is to be determined by a "reasonable person" standard, not by individual inquiry about each of the Class members' subjective beliefs about what that phrase means.

Accordingly, for the reasons set forth more fully herein, this Court should grant this Motion for Class Certification, appoint Plaintiff as Class Representative and appoint Plaintiff's counsel as Class Counsel.

## II.     STATEMENT OF RELEVANT FACTS

This is a class action brought on behalf of a class of cellular telephone callers, mostly in the construction industry, and for the most part ordering concrete products from Hanson. Those calls to Hanson's Dispatch lines were recorded without any prior disclosure of such recording by Hanson. The only warning was that the calls may be "monitored", not "recorded". Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6. Those are two completely different acts under the Privacy Act, and both are prohibited without consent of the persons whose conversation is being overheard by a third party, or being recorded. *See* Penal Code § 632(a). The proposed Class Period runs from July 15, 2009, the date when Defendant began recording calls using its then-newly installed Oaisys Talkument Telephone System ("Oaisys System"), to December 23, 2013, when the monitoring warning was modified to add a warning about recording the calls as well. Campion Decl. Ex. B, Response to Interrog. No. 6, p.10:7-18.

When callers called Hanson to order either of Hanson's two primary products,

Aggregate (concrete) or Ready Mix, the caller heard the IVR's two options:   either "Aggregate Material Dispatch" or "Aggregate Ready Mix Dispatch." Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6.   Hanson's Oaisys System utilizes an Interactive Voice Response System (IVR) to route incoming calls to particular extensions, including those two Dispatch lines. Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10: 6.   The Oasisys System automatically recorded all calls made to the two Dispatch lines. Campion Decl. Ex. A., Woods depo, 47:23-25; 80:12-81:4. [4] The recorded calls at issue in this case were the calls routed to those two Dispatch lines. Campion Decl. Ex. A, Woods depo, 80:12-81:4.   When the incoming callers chose the Dispatch options, they all heard the "Your call may be monitored for quality assurance" message prior to ever actually speaking to a live person.   Campion Decl. Ex. A, Woods depo, 63: 6-11; 65:11-66:12; Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6. Callers to either of the Hanson Dispatch lines all heard the recorded announcement. Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6.

After selecting either of the two dispatch IVR options, *all* callers were automatically connected to a prerecorded message which stated:

> "Thank you for calling Hanson Aggregate Material [Ready Mix] Dispatch. [5] *Your call may be monitored for quality assurance*. Our hours of Operation are 6:00AM to 4:00 pm, Monday thru Friday. Please remain on the line and your call will be answered as soon as possible. Thank you for your patience."

Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6; Ex. A, Woods depo, 65:1-22 (emphasis added).

---

[4]    See Campion Decl, Ex. C, Supplemental Response to Interrog. No. 5, wherein Hanson admits that all calls to either its Ready Mix Dispatch or Aggregate Dispatch Lines were automatically "monitored" and admitting that by "monitored", that this monitoring was done by "recording" those calls.

[5]    Callers could select either "Aggregate Material Dispatch" or "Aggregate Ready Mix Dispatch".   With the exception of the substitution of "Material Dispatch" or "Ready Mix Dispatch" the prerecorded message played was the same for every single caller to the Hanson Dispatch lines. Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6.

That exact same message was played for every single caller to both Hanson Dispatch lines from July 15, 2009 until the message was altered to include notice of both possible monitoring *and recording* on or about December 24, 2013. Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:18. In light of the modification to the prerecorded notice on that date, Plaintiff is asking the Court to certify the class for calls made only through December 23, 2013, i.e., the day before the notice was changed.  That means every Class member heard the exact same message/warning, so any issues about whether that message/warning was sufficient to provide the requisite consent can be answered on a class-wide basis.

That recording process resulted in 210,688 recorded calls from Class members, which consisted of calls from 12,551 unique cell phone numbers belonging to Class members. Hansen Decl., at ¶ 5.

To be certain, nothing on Hanson's warning to callers about potential "monitoring" of calls warned the caller that the calls were going to be "recorded". Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6.  Thus, there cannot be any issue that the callers consented to *any recording* of the calls.  Importantly, the "plain language" of the prerecorded disclosure – chosen by and inserted in the warning by Defendant – makes no mention of the possibility that calls would be recorded.

Discovery has revealed that all calls recorded by Defendant during the Class Period on its Oaisys Talkument System are maintained on that system.  Campion Decl. Ex. A, Woods depo, p. 112:5-23.  The list of all recorded calls (the "List") provided in discovery to Plaintiff, and accordingly to Plaintiff's expert, revealed that extensive information about the recorded calls is contained in the Oaisys Talkument System database. That information provided in the List includes columns with the following headings: the date, duration direction, recorded, outside name, outside number, extension, account, Ref ID, Subject, DID, site ID, Call-Record ID, Area Code, ACD Group, ACD Agent, Document Name, PCD Pathname, Call Recorded, Start Time, Save Util, and Share Expires.  Suffice to say the Oaisys System is capable of sorting and maintaining

much information, but the information needed for class certification and for this action is the simply the date of the recordings, the phone number of the caller that was recorded, the number of Class Members' recorded calls and the number of the Class members' unique cellphones used in those recordings.  *See* Hansen Decl. at ¶ 4.

Because the Class as defined consists of only those persons recorded by Hanson who called Hanson using their cell phones during the Class Period, it was necessary to determine which calls were made using a cellphone. By using commercially available lists of cell block identifiers, and also "portability" lists to determine if the number was in fact a cellphone or a landline at the time of the recording, Plaintiff's expert was able to determine how many calls to Hanson were recorded which utilized cellphones, and how many unique cellphone numbers were used to make those calls, during the Class Period. Hansen Decl. at ¶ 4.  Mr. Hansen has taken into consideration how many calls were "ported" to and from landlines as well.  *Id*.  Mr. Hansen has evaluated the List and has determined there were 210,688 calls to Hanson (inbound) which were recorded from cellphone numbers and of those calls, there were 12,551 unique, different cellphone numbers whose users were recorded during the Class Period.  *Id.* at ¶ 5.

## III.    ARGUMENT

### A. Legal Standard

"As the party seeking class certification," Plaintiff bears the burden of demonstrating that "each of the four requirements of Rule 23(a) *and* at least one of the requirements of Rule 23(b)" are met.  *Zinser v. Accufix Research Inst*., 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)) (emphasis added), *amended by* 273 F.3d 1266 (9th Cir. 2001). Those requirements are "numerosity, commonality, typicality, and adequacy." *Zinser, supra*, at 1181.  In addition, even though Rule 23 does not expressly require a class to be ascertainable, federal courts have required a class to be ascertainable based on objective criteria. *Marcus v. BMW N. Am., LLC*, 687 F.3d 583, 591-92 (3rd Cir. 2012).

Courts engage in a "rigorous analysis" to determine whether the requirements of Rule 23(a) have been satisfied. *Gen. Tel. of the Sw. v. Falcon*, 457 U.S. 147, 161, (1982*); Wal-Mart Stores, Inc. v. Dukes*, ---- U.S. ---, 131 S.Ct. 25541, 2551, 180 L.Ed.2d 374 (2011).   "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.   That cannot be helped." *Wal-Mart Stores, Inc., supra,* 131 S. Ct. at 2551. "[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978) (citation omitted).

"The court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975); *Westways World Travel, Inc. v. AMR Corp*., 218 F.R.D. 223, 230 (C.D. Cal. 2003).  But "the court may not put the plaintiff to preliminary proof of his claim . . . ." *Blackie*, 524 F.2d at 901 n.17.  "[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule." *Blackie*, 524 F.2d at 901. However, at the class certification stage, courts resolve factual disputes only to the extent necessary to determine whether class certification is appropriate. *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 983 (9th Cir.2011) ("[T]he district court was required to resolve any factual disputes necessary to determine whether there was a common pattern or practice that could affect the class as a whole." (emphasis removed)).  But the Court should not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims".  *Id.,* at 983, n. 8.  Thus, whether "monitoring" means "recording", which will resolve the affirmative defense of consent, should not be decided at this time.

"[N]otwithstanding [the] obligation to take the allegations in the complaint as true, the Court is at liberty to consider evidence which goes to the requirements of Rule 23

even though the evidence may also relate to the underlying merits of the case." *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985). Ultimately, all that is necessary is enough information "to form a reasonable judgment" "on each of the Rule's requirements." *Blackie*, 524 F.2d at 901 n.17. District courts have "broad discretion" to determine whether the Rule 23 requirements are met. *Zinser*, 253 F.3d at 1186.

## B. The Requirements of Rule 23(a) Have Been Satisfied.

This action may be properly maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)(4) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions as well as the predominance and superiority requirements of Rule 23(b)(3).

### 1. Numerosity Is Established Because The Class Includes Thousands of Members.

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). "Impracticability is not measured strictly by number, although numbers are important; rather, impracticability depends on the facts of each case." *Slaven v. BP Amer., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Id.* (citations omitted); *see also Celano v. Marriott Int"l, Inc.*, 242 F.R.D. 544, 549 (N.D.Cal. 2007) (same).

Defendant has produced a list of its recorded telephone calls and telephone numbers to enable Plaintiff's expert Jeff Hansen. He compared those numbers to cell block identifiers in order to determine the number of recorded calls of Class members and number of persons in the Class by determining unique cellphone numbers recorded. Here, as indicated above, the number of recorded calls in the Class is 210,688 and the number of unique cellphone numbers recorded in the Class is 12,551. *See* Hansen Decl., at ¶ 5. Therefore, the Class here is so numerous that the individual joinder of all of its

PLAINTIFF'S MEMO OF Ps & As IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION

Case No. 12CV1685 BAS JLB

members is impractical.  Given the size of the class, the numerosity factor is satisfied. *Reynoso v. South County Concepts*, No. SACV07-373-JVS (RCx), 2007 WL 4592119, at *2 (C.D. Cal. Oct. 15, 2007) (Selna, J.)

While not a separate Rule 23(b) factor, the persons making up the Class are ascertainable.  "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 828, 97 Cal.Rptr.2d 226 (2000). As this Court held in *Stemple v. QC Holdings, Inc.,* Case No. 12cv01997-BAS (WVG), 2014 WL 4409817, *4 (S.D.Cal. 2014), "[a]lthough the exact identities of the class members need not be specified at the class certification stage, 'the proposed class must be sufficiently definite in order to demonstrate that a class actually exists," (citing to *Oshana v. Coca–Cola Bottling Co.,* 225 F.R.D. 575, 580 (N.D.Ill., 2005)) [citations omitted]. . . . "[A] class will be found to exist if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."

As the court held in *O'Connor v. Boeing North American, Inc*., 184 F.R.D. 311, 319 (C.D.Cal. 1998):"However, the class need not be 'so ascertainable that every potential member can be identified at the commencement of the action.'Wright, Miller & Kane, § 1760 at 117. As long as 'the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist.' *Id.* at 118."

As stated above, identification of cellular telephone calls to Defendant's Dispatch lines is a relatively straightforward matter of comparing commercially available cell block identifier databases to the List of recorded calls. According to Jeff Hansen, that list or report is searchable electronically to determine exactly which unique cellphone numbers were recorded during the Class Period, and how many calls involving those

numbers were recorded during the Class Period.   Hansen Decl., at ¶¶ 2, 4. [6]   The cellphone numbers can then be processed by a service specializing in reverse cellphone number look-ups to identify the owners, with what can be expected to be a high success rate, or through a call center calling each cellphone number by manually calling each number.   *See* Declaration of Lisa Mullins of ILYM Group, Inc. in Support of Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Mullins Decl.") at ¶¶ 5-7, filed herewith.   In that declaration, Ms. Mullins states that their claims administration company, ILYM Group, Inc., conducts such reverse cellphone number look-ups to identify the owners of cellphone numbers, with their most recent attempt resulting in success rate of 87.78% in identifying the names and addresses of such cellphone number owners.   *See also Stemple v. QC Holdings, Inc., supra,* at *8, *10, approving a reverse cellphone number look-up as a means to identify Class members, and citing *G.M. Sign, Inc. v. Finish Thompson*, *Inc.*, 2009 WL 2581324, at *4 (N.D.Ill. Aug. 20, 2009) (permitting plaintiff to use phone numbers to "work backwards" to locate and identify class members). In addition, because the number of Class members only totals about 12,000 (compared to perhaps millions commonly seen in Telephone

---

[6]   In this regard, Plaintiff is aware of the Court of Appeal decision in *Hataishi,* in which the court stated in dictum "the trier of fact must first determine what type of telephone was used to receive the subject call. That determination, as the trial court found, will require an individualized call-by-call inquiry." *Hataishi v. First American Home Buyers Protection Corporation*, 223 Cal.App.4th 1454, 1469 (2014).  "The trial court found that Plaintiff's proposed methodology for identifying outbound calls provided no means to determine whether a landline, cellular or cordless telephone had been used to receive the subject call". *Id.*  However, in that case, there was no Penal Code § 632.7 cellphone class that Plaintiff sought to be certified, but Plaintiff alluded to perhaps amending her complaint to add that claim to the existing Penal Code § 632 claim. In its holding, the court was apparently unaware that these cellphone block identifiers are commercially available and the ease in which cellphone numbers can be identified though such databases,  which are routinely used in the litigation of Telephone Consumer Protection Act cases wherein calls to cellphones without prior express consent are illegal. Here, Plaintiff has demonstrated how this can be determined without individual inquiry simply by using commercially available  cell-block identifiers.

Consumer Protection Act cases, and other cases), a call center can call each Class member on their cellphone directly to confirm their names and addresses. The cost is relatively minimal for that service, expected to be at most $5.00 per call, and perhaps less. Mullins Decl., ¶ 7. Also, if the case settles, that contact call can be used to advise Class members how to access the case website with notice and claims information. *Id.* Furthermore, most of the recorded calls were for Hanson product orders, and Hanson maintains in its records all orders obtained which can be found in the "concrete or aggregate application". Campion Decl. Ex. A., Woods depo, p.173:14-22. Its records can be used to match up any numbers that cannot be located by reverse cellphone look-up, direct calling or both. Thus, the Class is ascertainable.

### 2. Commonality Is Easily Satisfied Because This Case Is Based On Defendant's Identical Conduct Which Caused the Same Injury to the Plaintiff and the Class Members.

Under Rule 23(a)(2), there must be questions of law and/or fact common to the proposed class. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S. Ct. 2541, 2551 (2011) (citation omitted). In order to for the Class member claims to be "productively be litigated at once," "[t]heir claims must depend upon a common contention." *Id.* "That common contention, moreover, must be of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions' - even in droves - but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*

Plaintiff and each of the Class members were recorded, and they all have identical claims against Hanson for such recordings made without their consent. See Second Amended Complaint, ¶¶ 8, 10-16, 18, 20. Commonality is clearly shown under *Wal-Mart*. The "common contentions" under *Wal-Mart* are whether Hanson recorded the

calls, and whether the warning "your call may be monitored" constitutes warning not only of monitoring the calls, but also of recording the calls.   These Class members have in fact "suffered the same injury" by all having been recorded by Hanson. The primary common issue is whether the identical prerecorded disclosure which advised the Class members only that their calls "may be monitored for quality assurance" constitutes consent to be recorded.   Answers to those questions are clearly common "answers apt to drive the resolution of the litigation" under *Wal-Mart*.   Common factual issues include all calls to the Dispatch lines heard the prerecorded announcement about "monitoring" and that during the Class Period there was no variation in the outgoing message. Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6.

And Defendant's PMK testified that he was not aware of any documentation of consent from any customer.  Campion Decl., Ex. A, Woods depo, p. 174:12-24.

All calls to the Dispatch lines heard the prerecorded announcement that the calls "may be monitored for quality assurance".  Campion Decl. Ex. B, Response to Interrog. No. 6, pp. 9:22-10:6.  "Monitored" has a plain meaning and the Court should evaluate the efficacy of that warning at the appropriate time later based upon the plain meaning of what it says. Because all of the Class members heard the exact same prerecorded message with a plain meaning, that meaning is to be determined by a "reasonable person" standard.   [7] As a result, this is not a case which invites speculation as to any

---

[7] *See, e.g., Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) on Form Contracts:

> "[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such. *E.g., Broad v. Rockwell Intern. Corp.,* 642 F.2d 929 (5th Cir.) (en banc) *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981) (breach of indenture agreement); *Irving Trust Co. v. Nationwide Leisure Corp.,* 95 F.R.D. 51 (S.D.N.Y.1982) (breach of contract failure to provide charter tour services); *Jennings Oil Co., Inc. v. Mobil Oil Corp.,* 80 F.R.D. 124 (S.D.N.Y.1978) (validity of general release

individuals' personal understanding or subjective belief of what the "monitoring" disclosure might mean, absent any warning of "recording", as Defendant might argue. In the face of a statute which prohibits either (or both) of two acts "eavesdrop[ping] *or* record[ing]" without consent, Defendant chose to provide notice of only  one of the two proscribed activities  (i.e., it gave notice of monitoring but *not* recording).  Because there is an explicit, standard and plain language disclosure - "your call may be monitored" - the Court should determine this issue on a class-wide basis.  But that issue is not for determination at the class certification stage, as discussed below.

Defendant may argue that class certification is improper because individual inquiry is necessary to determine what each of the Class members thought the "monitoring" language meant, hoping someone will agree with Hanson's contention that "monitoring" means and includes "recording". But as explained above, there is no room for one's subjective belief, or extrinsic evidence to contradict, explain, or supplement the plain

---

provision of contract); . . . *Janicik v. Prudential Insurance Co. of America,* –––Pa.Super.Ct. ––––, 451 A.2d 451 (1982) (interpretation of form insurance contract); *Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn.,* 281 Or. 533, 577 P.2d 477 (1978) (form mortgage); . . . *Perlman v. First National Bank of Chicago,* 15 Ill.App.3d 784, 305 N.E.2d 236 (1st Dist.1973) (360-day year method of computing interest). . . ."

*See Vasquez v. Superior Court*, 4 Cal. 3d 800, 811-12 (1971) re: uniform memorized sales presentations:

"It is asserted by plaintiffs that they can demonstrate these representations were in fact made to each class member without individual testimony because the salesmen employed by Bay Area memorized a standard statement containing the representations (which in turn were based on a printed narrative and sales manual) and that this statement was recited by rote to every member of the class. If plaintiffs can prove their allegations at the trial, an inference that the representations were made to each class member would arise, in which case it would be unnecessary to elicit the testimony of each plaintiff as to whether the representations were in fact made to him."

language of "your call may be monitored for quality assurance", and certainly no need for any individual inquiry as to what those words might subjectively mean to different callers. It is clear this is a class-wide issue amenable to class treatment.

Indeed, this case is readily distinguishable from cases where a warning that the calls would be recorded was available and on the phone system, but certain persons heard the warning and certain others did not. Thus, in those types of cases, it is necessary to determine whether and in what manner the callers heard the existing warning of the recording of their calls. *See, e.g*., *Torres v. Nutrisystem, Inc.,* 289 F.R.D. 587 (C.D.Cal. 2013). Here, however, there was never any such warning of a recording as in *Torres* and therefore, the *Torres* analysis does not apply.

In any event, this issue is not determinative of the class certification issue. As the U.S. Supreme Court recently cautioned, those merits issues are not to be decided at the class certification stage. *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013):

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," ," *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ___, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (internal quotation marks omitted), Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. See *id.,* at ——, n. 6, 131 S.Ct., at 2552, n. 6 (a district court has no " 'authority to conduct a preliminary inquiry into the merits of a suit' " at class certification unless it is necessary "to determine the propriety of certification" [citations omitted]; Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U.S.C.App., p. 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.").

It is clear that the claims of all Class members about having been recorded without their consent "stem from the same source." *Hanlon*, 150 F.3d at 1019-20. There is plainly a common core of salient facts and legal issues, and resolved by the answer to the

common questions.  *See Hanlon*, 150 F.3d at 1019. Thus, the Rule 23(a)(2) commonality requirement is easily satisfied.

### 3. The Typicality Requirement Is Satisfied Because Plaintiff's Claims All Are Based On The Same Conduct And Involve The Same Injury As The Class Members.

The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(3)).  "Under the rule's *permissive* standards, representative claims are 'typical' if they are *reasonably co-extensive* with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (emphasis added).  As the court held in *Buonomo v. Optimum Outcomes, Inc*., --F.R.D.--, 2014 WL 1013841, 13cv5274 (N.D. Ill. 2014): "Generally, "[a] claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [is] based on the same legal theory," citing to *Oshana v. Coca–Cola Co.,* 472 F.3d 506, 514 (7th Cir.2006), quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992)). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon,* 976 F.2d at 508. [citation omitted].  " 'Typicality refers to the *nature* of the claim or defense of the class representative, and *not to the specific facts from which it arose* or the relief sought.' " *Id.*, (emphasis added). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citation omitted).  "Under Rule 23(a)(3), it is not necessary that all class members suffer the same injury as the class representative." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (citing *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.")).

Here, the claims of Plaintiff are identical to the claims of the proposed Class. See Declaration of Eric Barajas in Support of Class Certification and for Appointment of Class Representative and Appointment of Class Counsel ("Barajas Decl."), at ¶¶ 4, 5. The claims are based upon the same course of conduct as injured the other Class members, the same nature of the claim and also based upon the same legal theory.  As noted above, each Class member was recorded by Hanson without their consent. Each was played the same prerecorded warning which warned only that their call "may be monitored for quality assurance" but notably did not disclose that calls might be recorded.  Each Class member made his/her call to Defendant (inbound calls to Hanson) on a cellular telephone. The recording of each call resulted in the same violation of Penal Code § 632.7.  Each violation gives rise to the same statutory damages per recorded phone call.   As stated above, as to the Class members, there were 210,688 recorded calls from 12,551 unique cellphone numbers recorded by Hanson during the Class Period.   Each of those claims is exactly the same, both factually and based upon the same legal theory, that Hanson recorded all of those inbound cellphone calls without the caller's knowledge or consent.

Furthermore, Plaintiff is not subject to any unique defenses that threaten to become the focus of the litigation.  *Hanon*, 976 F.2d at 508.  Accordingly, Plaintiff is well-suited to represent the Class and its claims are typical of the Class claims.

### 4. Adequacy Of Representation Is Also Satisfied By Plaintiff And Its Counsel.

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'"  *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)). "Resolution of two questions determines legal adequacy: (1) does the named plaintiff and her counsel have any conflicts of interest with other class members and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class?" *Id.* The class representatives may not have interests antagonistic to the remainder of the class.  *Lerwill v. Inflight Motion Pictures,*

*Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978).

### a) Plaintiff Is An Adequate Class Representative and Should be Appointed Class Representative on Behalf of the Class.

The general rule is that an adequate class representative needs to only have personal experience with the claims of the lawsuit and, therefore, a general familiarity with the case, even if the class representative is unfamiliar with the litigation proceedings. *See, e.g., Jimenez v. Domino's Pizza, Inc*., 238 F.R.D. 241, 249 (C.D. Cal. 2006). Plaintiff certainly satisfies that requirement. Plaintiff corporation NEI, through its president Eric Barajas, brought this lawsuit to prevent Hanson from recording cellphone calls without the callers' consent, in violation of the law. *See* Barajas Decl., at ¶ 1. To the extent that Hanson has already corrected its practices by now including the term "recording" in its warning, Plaintiff has achieved that part of its goal of enforcing the statute. *Id*. at ¶ 6. Plaintiff wants to represent the class's interests and has no conflict of interest with any members of the Class. *Id*. at ¶ 1. Plaintiff's claims arise from the same uniform and standardized conduct of Defendant as the Class and Plaintiff seeks remedies equally applicable and beneficial to the Class. *Id*. at ¶ 5. In sum, Plaintiff will fairly and adequately protect the interests of the Class.

### b) Counsel Are Qualified, Experienced And Have The Resources To Vigorously Prosecute The Action and Should be Appointed Class Counsel.

Rule 23(g) requires that a district court appoint class counsel for any class that is certified. *See* Fed. R. Civ. P. 23(g)(1)(A). In appointing class counsel, Rule 23(g) lists four factors for consideration: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions or other complex litigation and the type of claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

In considering the requirement that "Plaintiffs are represented by qualified and

competent counsel[,]" *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007), *rev'd on other grounds,* 564 U.S. 277, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), "the Court will look to the professional qualifications, skills, experience and resources of the lawyers." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650 (C.D. Cal. 1996). Plaintiff is represented in this case by two law firms with extensive litigation experience, and also with experience in complex and class action litigation, with the experience and resources necessary to vigorously pursue this action.   *See* Campion Decl. at ¶¶ 6-13; *see also* the Declaration of Richard E. Grey In Support of Motion for Class Certification and for Appointment of Class Representative and Class Counsel ("Grey Decl.") filed herewith, detailing both firms' experience in general litigation and also in litigating class actions.

Plaintiff submits both firms are qualified to represent the Class. To summarize both firms' qualifications, Douglas J. Campion has been in practice in California since 1977, over 37 years, all of it in litigation, with the past 25 years devoted primarily to class action litigation. *See* Campion Decl. at ¶¶ 6-13. Over the past four to five years, Mr. Campion has been involved in the largest five settlements in Telephone Consumer Protection Act cases, including *Arthur v. SLM Corporation*, 10-CV-00198 JLR (W.D. Wash) settlement of $24,115,000; *Rose v. Bank of America*, Case No. 5:11-cv-02390 EJD (N.D.Cal.), (co-lead counsel) settlement in excess of $32,000,000; *In Re Jiffy Lube Int'l, Inc. Text Spam Litigation*, MDL Case No. 2261, Master Case No. 3:11-MD-02261–JM-JMA (liaison counsel) monetary recovery and certificates for services, approximately $40,000,000 value; *Malta, et al. v. Wells Fargo Home Mortgage, et al.,* 10-CV-1290 BEN-NLS (S.D.Cal.) (co-lead counsel), settlement of $17,100,000; *Mills v. HSBC Bank Nevada, N.A.,* Case No. 1:14-cv-190 (N.D.Ill.) settlement of $39,975,000 (preliminarily approved July 2014).  Mr. Campion has been litigating class actions since 1989, when he worked for the nationally known securities litigation firm of Barrack, Rodos & Bacine, and working closely on securities cases with Milberg Weiss Bershad Hynes & Lerach's San Diego office. *Id.*

Similarly, Richard E. Grey of the Grey Law Group, APC, has been practicing civil litigation for 26 years.  He was admitted to the California State Bar in 1991 and has been practicing continuously in California ever since.  He is the sole owner of Grey Law Group, APC, previously known as the Law Office of Richard E. Grey, established in 1993.  He is also admitted to this Court and the United States Court of Appeals for the Ninth Circuit where he successfully appealed the case of *Kang v. U.Lim America, Inc. (2002) 296 F.3d 810*.  He has been exclusively engaged in civil litigation since 1998.

Since 1988, Mr. Grey has been litigating scores of cases, including several Class actions, including *Perriman, et. al. v. West Coast Aquarium Industries*, San Diego Superior Court #GIC835173;   *Martha Rodriguez v. Yum Yum Donuts*, San Diego Superior Court #GIC842706 (co-counsel);   and *In Re Jiffy Lube Int'l, Inc. Text Spam Litigation*, MDL Case No. 2261, Master Case No. 3:11-MD-02261–JM-JMA.   He worked closely with Mr. Campion on those cases and is doing the same here.

## C. The Requirements of Rule 23(b)(3) Have Been Met.

Class certification under Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R.Civ. P. 23(b)(3). "Certification under Rule 23(b)(3) is proper 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Negrete v. Allianz Life Ins. Co. of N. Amer.*, 238 F.R.D. 482, 489 (C.D. Cal. 2006) (quoting *Hanlon*, 150 F.3d at 1022).

### 1. Common Issues Predominate Over Individual Issues.

"The Rule 23(b)(3) predominance inquiry tests whether the proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the

dispute on a representative rather than individual basis." *Hanlon*, 150 F.3d at 1022.

The Court rests its examination on the legal or factual questions of the individual class members. *Hanlon*, 150 F.3d at 1022. Central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods.*, 521 U.S. at 617.

Here, common questions of fact and law predominate over any alleged idiosyncratic differences between proposed Class members. Common factual issues predominate because all of Plaintiff's claims are based on the identical action taken by Defendant in recording the Class members inbound cellphone calls after providing each recorded caller with a warning only that "this call may be monitored". No warning of recording the calls was ever given to the Class. *See, e.g., Hanlon*, 150 F. 3d at 1022. As discussed above regarding "commonality," the factual questions posed by this case are simple: Is Defendant unlawfully recording all customer cellular telephone calls without the informed consent of its callers, and what are the damages? The factual issue of whether a warning that the call would be "monitored" constitutes a warning and consent to being "recorded" is a common issue that can be decided on a class-wide basis. Indeed, there are few, if any, factual issues that are individual and not Class issues.

### 2. Class Treatment Is A Superior Method Of Adjudication.

A class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) sets forth four nonexclusive factors for courts to consider regarding superiority:

> "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3)(A)-(D).  "'A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.'" *Zinser*, 253 F.3d.

"A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *Reynoso*, No. SACV07-373-JVS (RCx), 2007 WL 4592119, at *4 (quotations omitted).  In addition, a class action may be superior to other methods of litigation where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234.

### a) Class Members Do Not Have a Strong Interest in Individually Prosecuting Separate Actions.

Penal Code § 637.2 calls for at a minimum the award of $5,000 in statutory damages for each violation of Penal Code § 632.7.  "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190; *Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (noting  the Advisory Committee to Rule 23 "had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.").

Plaintiff seeks the statutory remedies provided in Pen. Code § 637.2  of the California Penal Code, i.e., $5,000 per statutory violation. A $4,000 per class member statutory damages sum has been characterized as "not large".  *See McKenzie v. Fed. Ex. Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011) (Fees, J.).  Thus, the Class members will likely be interested in pursuing this matter as a class because the individual damages claims of each Class member are not substantial enough to warrant individual filings.

### b) Putative Class Members Have Not Commenced Individual Actions Against Defendant.

As the court held in *Zinser*, 253 F.3d at 1191, if a substantial number of other lawsuits have already been filed and are pending separately, then perhaps the individual cases should go forward separately and litigants should be encouraged to intervene in other actions.  However, neither Plaintiff nor its counsel are aware of any other lawsuits against Defendant commenced by or on behalf of members of the Class concerning the claims and issues raised in the instant putative class action.  (Campion Decl. ¶ 13.) "Thus, this subfactor weighs in favor of class certification because there appears to be no risk of multiple adjudications and no indication that absent class members would prefer individual actions."  *Winkler*, 205 F.R.D. at 245.

### c) It Is Desirable to Concentrate the Litigation of the Claims in the Southern District of California.

The Southern District of California is an appropriate forum because Plaintiff is not aware of any other class action litigation concerning the claims.  *Newberg on Class Actions*, § 4:31 (4th ed. 2002) ("In the class action context, the desirability of concentrating claims in a particular forum is relevant only when other class litigation has already been commenced elsewhere.").

Moreover, Defendant's San Diego office is where the calls at issue were recorded and all of the relevant calls were made to a telephone number answered and recorded in San Diego. Campion Decl. Ex. A, Woods depo, 10:9-14.  Thus, the potential plaintiffs in cases against Hanson for this claim are not located across the country.

### d) Managing This Particular Class Action Is Unlikely to Be Difficult.

"The Rule 23(b)(3)(D) manageability inquiry 'encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit.'" *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 491 (E.D. Cal. 2006) (quoting *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 164, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)); *Brink v. First Credit Resources*, 185 F.R.D. 567, 572 (D. Ariz. 1999) ("The

more that common issues predominate, the more likely it is that a class action is superior.").

The class is narrowly defined to include only persons whose calls were recorded in violation of a California statute.  Only the law of the State of California, i.e., California Penal Code §§ 632.7, and/or 637.2, is being raised. Thus, resolving the instant putative class action requires only the application of one state's laws, i.e., California law, and is therefore manageable. *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 491 (E.D. Cal. 2006) ("All of the claims are governed by the same state law.").

Moreover, there is a significant possibility that the resolution of a common factual and legal issue—whether Defendant violated California law by unlawfully recording all inbound cellular telephone calls involving its callers—will resolve this entire action. Because the dispute between the parties concerns legal and factual issues shared by Class members that are subject to generalized proof, class certification is more efficient than individual actions would be. Indeed, if the thousands or more plaintiffs pursued their claims individually, they would clog the "courts with innumerable individual suits litigating the same issues repeatedly." *Dukes v. Wal-Mart, Inc.*, 509 F.3d at 1193; *Herrera v. LCS Financial Servs. Corp.*, 274 F.R.D. 666, 682 (N.D. Cal. 2011) ("A class action is judicially efficient in lieu of clogging the courts with thousands of individual suits."). Thus, the overwhelming benefits that are inherent in litigating this matter as a class action outweigh any possible difficulties.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the proposed Class be certified, that NEI Contracting & Engineering, Inc. be appointed Class Representative and that the law firms of The Law Offices of Douglas J. Campion, APC and The Grey Law Group, APC be appointed Class Counsel.

Dated: September 19, 2014        */s/ Douglas J. Campion*

**LAW OFFICES OF DOUGLAS J. CAMPION. APC**

*/s/ Richard E. Grey*
**GREY LAW GROUP, APC**
Richard E. Grey

Attorneys for Plaintiff and the Putative Class