# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEI CONTRACTING AND ENGINEERING, INC.,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>HANSON AGGREGATES PACIFIC SOUTHWEST, INC., *ET AL*.<br><br>　　　　　　　　Defendants. | Case No. 12-cv-01685-BAS(JLB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**<br><br>(ECF No. 74) |

Presently before the Court is Plaintiff NEI Contracting and Engineering, Inc.'s ("Plaintiff") motion for class certification, appointment of class representative, and class counsel. Also before the Court are the opposition filed by Defendant Hanson Aggregates Pacific Southwest Inc. ("Hanson Pacific") (ECF No. 82), and Plaintiff's reply (ECF No. 86). Having reviewed the papers submitted and heard oral argument from both parties, for the reasons set forth below, the Court **DENIES** Plaintiff's motion for class certification (ECF No. 74).

## I. FACTUAL BACKGROUND

Hanson Pacific, Hanson Aggregates, Inc., and Lehigh Hanson Co. (collectively, "Defendants") "are related companies and are all engaged in the business of providing construction concrete, aggregate, ready mix and related materials to contractors engaged in the construction industry." (SAC ¶ 4.) The "vast majority of Hanson [Pacific]'s customers are commercial companies that place numerous phone orders for Aggregate or Ready-Mix materials each year." (ECF No. 82-1 ¶ 2.) Many of the commercial customers have long-standing business relationships with Hanson Pacific that span many years. (*Id*.)

Hanson Pacific receives all orders for construction materials through a dedicated telephone line. (ECF No. 73-3 ¶ 5.) Prior to July 15, 2009, Hanson Pacific utilized a "Voice Print International" ("VPI") system, which created a recording of every call made to or from the Ready Mix Dispatch or Aggregate Dispatch lines. (*Id*. at ¶ 10; Mot at p. 4; ECF No. 82-6 ("Barajas Dep.") at 33:12-25.) While using the VPI system, Hanson Pacific used "beep tone generators" on all of its telephones which received calls routed to its Ready Mix Dispatch or Aggregate Dispatch lines, which produced an audible "beep tone" every fifteen seconds during a call to provide notice to callers that the call was being recorded. (*Id*. at ¶ 11; ECF No. 88 (Joint Statement of Undisputed Material Fact ("JSUF")) ¶¶ 1, 2.) Plaintiff is a contractor and placed numerous orders with Hanson Pacific for construction materials. (SAC ¶ 4; JSUF ¶ 4; ECF No. 82-1 ¶ 4.) Hanson Pacific located forty-eight recordings from five of the twenty-eight phone numbers provided by Plaintiff. (ECF No. 82-1 ¶ 4.)

On July 15, 2009, Hanson Pacific replaced the VPI system and discontinued its use of the "beep tone generators" and began using "a pre-recorded verbal admonition," which notified inbound callers that their calls "may be monitored for quality assurance." (JSUF ¶ 5; *see also* ECF No. 73-3 ¶¶ 13, 14; ECF No. 74-4 at 3-4; ECF No. 74-3 at 6-7; ECF No. 82-1 ¶ 6.) On or about December 23, 2013,

1  Hanson Pacific updated the verbal admonition to state that calls may be "monitored
2  or recorded for quality assurance purposes." (ECF No. 73-3 ¶ 17; ECF No. 74-4 at
3  4.)

4        Plaintiff contends that Defendants recorded 210,688 calls made by putative
5  class members from cellphones during the class period beginning on July 15, 2009
6  and ending on December 23, 2013. (Mot. at 3; ECF No. 74-9 ("Hansen Decl.") ¶ 5.)
7  These calls were allegedly made from 12,551 unique cellphone numbers. (*Id.*;
8  Hansen Decl. ¶ 5) Therefore, Plaintiff seeks to certify a class of 12,551 members
9  with 210,688 claims. (*Id.*)

10 **II.  LEGAL STANDARD**

11       The class action is "an exception to the usual rule that litigation is conducted
12 by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v.*
13 *Dukes*, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682,
14 700-01 (1979)). In order to justify departing from that rule, "a class representative
15 must be part of the class and 'possess the same interest and suffer the same injury' as
16 the class members." *Id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431
17 U.S. 395, 403 (1977)). In this regard, Rule 23 contains two sets of class-certification
18 requirements set forth in Rule 23(a) and (b). *United Steel, Paper & Forestry,*
19 *Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v.*
20 *ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). "A court may certify a class
21 if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met,
22 and that at least one of the requirements of Rule 23(b) have been met." *Otsuka v.*
23 *Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).

24       "Rule 23(a) provides four prerequisites that must be satisfied for class
25 certification: (1) the class must be so numerous that joinder of all members is
26 impracticable; (2) questions of law or fact exist that are common to the class; (3) the
27 claims or defenses of the representative parties are typical of the claims or defenses
28 of the class; and (4) the representative parties will fairly and adequately protect the

1  interests of the class." *Id*. at 443 (citing Fed. R. Civ. P. 23(a)). "A plaintiff must
2  also establish that one or more of the grounds for maintaining the suit are met under
3  Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate
4  actions; (2) that declaratory or injunctive relief benefitting the class as a whole
5  would be appropriate; or (3) that common questions of law or fact predominate and
6  the class action is superior to other available methods of adjudication." *Id*. (citing
7  Fed. R. Civ. P. 23(b)). Plaintiff seeks class certification under Rule 23(b)(3).

8     "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc.
9  v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rather, "[a] party seeking class certification
10 must affirmatively demonstrate his compliance with the Rule—that is, he must be
11 prepared to prove that there are *in fact* sufficiently numerous parties, common
12 questions of law or fact, etc." *Id*. The Court must engage in a "rigorous analysis,"
13 often requiring some evaluation of the "merits of the plaintiff's underlying claim,"
14 before finding that the prerequisites for certification have been satisfied. *Id*.
15 "Although some inquiry into the substance of a case may be necessary[,] . . . it is
16 improper to advance a decision on the merits to the class certification state." *Staton
17 v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (citations and internal quotation
18 marks omitted).

19 **III. DISCUSSION**

20     Plaintiff brings this putative class action under California Penal Code section
21 632.7 ("Section 632.7"), which prohibits the intentional recording of a telephone call
22 involving at least one cellular telephone without the consent of all parties to the call.[1]

---

[1] California Penal Code Section 632.7 states, in relevant part: "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished[.]" Cal. Penal Code § 632.7(a).

1  A person injured under the statute may bring a civil action for damages and
2  injunctive relief against the person who committed the violation.  *See* Cal. Penal
3  Code § 637.2.  Plaintiff moves for certification of the following class:

> All persons who called Defendant with a cellular telephone and selected the Aggregate or Ready Mix Dispatch lines through Defendant's telephone system, whose calls were recorded by Defendant, during the time period beginning July 15, 2009, and continuing through December 23, 2013.

8  (Mot. at 3.)  Hanson Pacific opposes the motion for class certification on several
9  grounds, arguing that Plaintiff has failed to (1) satisfy the commonality and
10 heightened predominance requirements; (2) satisfy the numerosity, ascertainability,
11 and adequacy requirements; and (3) satisfy the superiority requirement.  The Court
12 finds that Rule 23(b)(3)'s predominance requirement is dispositive of Plaintiff's
13 motion, and thus does not address Hanson Pacific's remaining arguments.

### A.   Predominance

"The predominance test of Rule 23(b)(3) is far more demanding than the commonality test under Rule 23(a)(2)."  *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 607 (N.D. Cal. 2014) (quoting *Amchem Prod.'s, Inc. v. Windsor*, 521 U.S. 591, 624 (1997)) (internal quotation marks omitted).  "[It] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)) (internal quotation marks omitted).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Id.* (citation omitted).

In opposing class certification, Hanson Pacific argues that individual issues would predominate because determining whether each caller consented to the recording would require individualized inquiries into the particular circumstances

surrounding each caller.[2] (Opp. at 13.) In support of its argument, Hanson Pacific cites *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013), *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454 (2014), and *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014). In response, Plaintiff argues that this Court should determine the adequacy of Defendants' warning under a "reasonable person" standard, and not by analyzing each putative class member's subjective belief about whether they were being recorded. (Mot. at 5.) Plaintiff urges the Court to follow the reasoning in *Ades & Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13–cv–02468, 2014 WL 4627271, at *15 (C.D. Cal Sept. 8, 2014), in which the district court granted class certification on a Section 632.7 claim.

In *Torres*, the district court denied class certification on the plaintiff's Section 632[3] and Section 632.7 claims because plaintiff failed to satisfy the commonality and predominance requirements. *Torres*, 289 F.R.D. at 595. There, callers were able to bypass the defendant's warning that their calls "may be monitored or recorded." *Id.* at 590. The plaintiff argued that "commonality is 'easily satisfied' because 'this case is based on Defendant's identical conduct, which caused the same injury to both Plaintiff and Class Members.'" *Id.* at 591. The district court disagreed, stating that the answer to Section 632's confidentiality and consent questions would likely "vary significantly among class members given that the confidentiality and consent issues require individualized factual inquiries into the

---

[2] Hanson Pacific argues that resolving the consent question for each caller requires an examination of the following: (1) the length and breadth of the caller's relationship with Hanson Pacific; (2) whether and how many times the caller heard Hanson Pacific's "beep tone" warning; (3) whether and how many times the caller heard Hanson Pacific's verbal admonition; (4) whether the caller understood the verbal admonition to include recording; and (5) whether the caller had actual knowledge that its calls were being recorded. (Opp. at 2.)

[3] California Penal Code section 632 ("Section 632"), a related statute, prohibits the recording of confidential communications without the consent of all parties to the call. Cal. Penal Code § 632.

circumstances of each class member." *Id.* at 591-92.

In discussing the confidentiality element of Section 632, the district court noted that the trier of fact would need to examine, among other things, the length of each caller's relationship with the defendant, the number of times each caller called the defendant, and whether each caller heard the defendant's warning. *Id.* at 592. Noting that lack of consent is an element in both Section 632 and Section 632.7, the district court concluded that the same type of inquiry would need to be done on the issue of consent, which would similarly result in varying answers. *Id.* at 594 ("[W]hether a caller heard the Disclosure during the recorded call does not conclusively answer the question of consent."). Therefore, the district court found that "individual inquiries required to resolve *the consent* and confidentiality issues for each class member will dominant the litigation in this case." *Id.* at 595 (emphasis added).

In *CashCall*, a California Court of Appeal upheld the decertification of a class in a Section 632 case on similar grounds. *CashCall*, 231 Cal. App. 4th at 132-33. In *CashCall*, employees of the defendant lending company would listen in on (but not record) calls between other employees and the plaintiffs, who were people that borrowed money from the defendant. *Id.* at 118-20. To complete a loan application, all borrowers had to call the defendant. *Id.* at 120. The defendant's telephone system provided a warning that calls "may be monitored or recorded[,]" but callers could bypass the warning in at least two ways and it was not played on outbound calls. *Id.* at 120-21. The trial court granted defendant's decertification motion, finding that individual issues would predominate. *Id.* at 124. The appellate court affirmed, stating the following:

> Although each plaintiff declared that he or she did not believe anyone was listening to their monitored calls with [defendant's] employees, the trier of fact would have to determine whether a person *under the particular circumstances and given the background and experience of each plaintiff* would have understood that the particular call was not

1     being monitored.

2 *Id.* at 130 (emphasis in original).  Because the confidentiality element was an issue
3 for each putative class member, the appellate court refused to apply class action
4 principles to remove that substantive burden from plaintiffs. *Id.* at 130-31.  Finally,
5 the appellate court found that "[u]nder section 632, the defendant has the right to
6 litigate the issue of each class member's *consent* and each class member's claimed
7 objectively reasonable expectation that the call was not being monitored [i.e.,
8 confidentiality][,]" and that the trial court did not abuse its discretion in holding that
9 common issues would not predominate.  *Id.* at 132 (emphasis added).

10        Defendant also relies on *Hataishi*, in which another California Court of
11 Appeal affirmed the denial of class certification on the plaintiff's Section 632 claim
12 due to her failure to satisfy the predominance requirement.  *Hataishi*, 223 Cal. App.
13 4th at 1469.  Defendant cites *Hataishi* for its holding that adding a section 632.7
14 claim would not have dispensed with the need for an individualized inquiry. (Opp at
15 p. 18.)  However, in so holding, the appellate court did not address the issue of
16 consent.  *See Hataishi*, 223 Cal. App. 4th at 1469 ("Even if a section 632.7 claim
17 were added, this would not eliminate the need to determine what type of telephone
18 was used[.]").  Therefore, Defendant's reliance on this case is inapposite.

19        In *Ades*, on the other hand, a district court granted class certification on the
20 plaintiff's Section 632.7 claim.  *Ades*, 2014 WL 4627271, at *15.  Prior to, and
21 during the class period, defendant provided no warning whatsoever to callers that
22 their calls would be recorded.  *Id.* at *1-*2.  The defendant opposed certification,
23 and, relying on *Torres*, argued that the issue of implied consent would require
24 individual inquiries, which would predominate the litigation.  *Id.* at *11.  In finding
25 that the plaintiff satisfied the predominance requirement, the district court declined
26 to follow *Torres*, and instead followed the reasoning of the California Supreme
27 Court in *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914 (Cal. 2006).  *Ades*,
28 2014 WL 4627271, at *11-*12.  The district court quoted the following passage

from *Kearney*:

> As made clear by the terms of section 632 as a whole, this provision does not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation, *that is, from recording the conversation without first informing all parties to the conversation that the conversation is being recorded.* If, after being so advised, another party does not wish to participate in the conversation, he or she may simply decline to continue the communication. A business that *adequately advises all parties to a telephone call, at the outset of the conversation*, of its intent to record the call would not violate the provision.

*Ades*, 2014 WL 4627271, at *11 (quoting *Kearney*, 137 P.3d at 930) (emphasis in original). *Kearney* involved a Section 632 claim, but, as noted by the district court in *Ades*, Section 632 contains the same "without the consent of all parties" language present in Section 632.7. *Id.* at *11.

The *Ades* court appears to place significance on the fact that the defendant had *never* provided a warning to callers: "[T]he Court does not find that evidence that some class members expected their calls to be recorded raises predominant issues of consent in the absence of any evidence that [defendant]—or anyone else—ever notified callers that [defendant] would record their calls before or at the outset of any call." *Id.* at *12 (emphasis removed). The *Ades* court also points out that "[d]espite extensive discovery, [the defendant] has not produced evidence that a single person meeting the class definition actually consented to a call being recorded during the Class Period." *Id.* Thus, the court in *Ades* found that foreseeability or an expectation of recording is insufficient to infer consent. *Id.* But *Ades* does not foreclose the possibility that there may be an inquiry as to actual knowledge of recording. The district court distinguished *Torres* on these grounds. The court found that individual consent issues in the plaintiffs' case would not predominate, unlike *Torres*, in which "many putative class members" had likely heard the recorded warning before bypassing it on a subsequent call. *Id.*

The Court finds *Ades* to be distinguishable. The district court in that case made its holding in a factually different context. At no point did the *Ades* defendant provide its customers with a warning that their calls would be recorded. *Ades*, 2014 WL 4627271, at *1-*2. Indeed, the *Ades* court found it significant that the defendant never gave notice. *See id.* at *12 ("[T]he Court does not find that evidence that some class members expected their calls to be recorded raises predominant issues of consent *in the absence of any evidence that* [*defendant*]—*or anyone else—ever notified callers that* [*defendant*] *would record their calls* before or at the outset of any call." (emphasis added)). Under those circumstances, the district court was certainly reasonable in holding that individual inquiries of some class members' expectations would not predominate.

Here, however, Defendants provided sufficient notice of recording for a period of at least seven years before switching to the verbal warning. (Opp. at 4.) And notably, the "vast majority of Hanson [Pacific]'s customers are commercial companies that place numerous phone orders for Aggregate or Ready-Mix materials each year," with many of them having long-standing business relationships with Hanson Pacific spanning many years. (ECF No. 82-1 ¶ 2.) Of significance, Hanson Pacific cites two putative class members, Verdugo Concrete Construction, Inc. ("Verdugo") and ARB Construction ("ARB"), as examples of customers who had actual knowledge their calls were being recorded *after* the switch to the verbal warning, and continued placing orders, thereby evidencing consent. (*Id.* at 8; ECF No. 82-8 (Verdugo), ECF No. 82-9 (ARB).) Verdugo has placed over 4,000 orders with Hanson Pacific since 2001, with over 1,200 orders being placed during the class period. (*Id.* at 10.) ARB has placed almost 300 orders with Hanson Pacific since January 2009, with approximately 200 orders being placed during the class period. (*Id.* at 19.) Thus, Verdugo heard the beep tones thousands of times, and ARB heard the beep tones approximately 100 times before the switch to the verbal admonition. According to Hanson Pacific, this factor, along with determining

whether a caller had actual knowledge of recording, is relevant to whether each putative class member consented.

Given the specific factual circumstances in this case, the Court agrees that individual inquiries into whether each putative class member provided consent will be necessary. *See CashCall*, 231 Cal. App. 4th at 132; *Torres*, 289 F.R.D. at 591-92. Defendants are entitled to litigate the issue of consent as to each person who has a potential claim. Therefore, the Court finds that Plaintiff has failed to establish that common questions of law or fact would predominate and, on that basis, Plaintiff's motion for class certification is denied.

## IV.  CONCLUSION & ORDER

For the foregoing reasons, Plaintiff's motion for class certification is **DENIED** (ECF No. 74).

**IT IS SO ORDERED.**

DATED: March 24, 2015

Hon. Cynthia Bashant
United States District Judge