**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEI CONTRACTING AND ENGINEERING, INC., *on behalf of itself and all others similarly situated*,<br><br>                                    Plaintiff,<br><br>          v.<br><br>HANSON AGGREGATES, INC., *ET AL.*,<br><br>                                    Defendants. | Case No.  12-cv-01685-BAS(JLB)<br><br>**ORDER:**<br><br>**(1)  GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING CLASS CERTIFICATION (ECF NO. 95); AND**<br><br>**(2)  CERTIFYING CLASS** |

On March 24, 2015, after consideration of the papers submitted and oral argument, the Court issued an order denying the motion for class certification, appointment of class representative, and class counsel filed by Plaintiff NEI Contracting and Engineering, Inc. ("Plaintiff").  (ECF No. 93 (the "Order").)  Plaintiff now moves for reconsideration of the Order "on the grounds there exists sufficient basis in law and fact for such reconsideration and seeks that the existing Order be modified to grant class certification."  (ECF No. 95 ("Mot.") at p. 2.)  Defendant Hanson Aggregates Pacific Southwest Inc. ("Hanson Pacific") opposes.  (ECF No. 100.)

The Court heard oral argument on this motion on July 23, 2015.  For the reasons

1   set forth below, Plaintiff's motion for reconsideration is **GRANTED**.

2   **I.      LEGAL STANDARD**

3          District courts have the authority to entertain motions for reconsideration of

4   interlocutory orders at any time before the entry of final judgment.  *See* Fed. R. Civ.

5   P. 54(b); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("[I]nterlocutory

6   orders and rulings made pre-trial by a district judge are subject to modification by the

7   district judge at any time prior to final judgment."); *Balla v. Idaho State Bd. of Corr.*,

8   869 F.2d 461, 465 (9th Cir. 1989) ("Courts have inherent power to modify their

9   interlocutory orders before entering a final judgment. . . . In addition, [Rule 54(b) of]

10  the Federal Rules of Civil Procedure explicitly grants courts the authority to modify

11  their interlocutory orders.").  To determine the merits of a request to reconsider an

12  interlocutory order, courts apply the standard required under a Rule 59(e)

13  reconsideration motion.  *See Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958,

14  968 (S.D. Cal. 2003) (Whelan, J.).

15         Reconsideration is appropriate under Federal Rule of Civil Procedure 59(e) "if

16  the district court (1) is presented with newly discovered evidence, (2) committed clear

17  error or the initial decision was manifestly unjust, or (3) if there is an intervening

18  change in controlling law."  *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5

19  F.3d 1255, 1263 (9th Cir. 1993); *see also Allstate Ins. Co. v. Herron*, 634 F.3d 1101,

20  1111 (9th Cir. 2011); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th

21  Cir. 2000).  However, a Rule 59(e) motion for reconsideration may not be used to

22  raise arguments or present evidence for the first time when they could reasonably have

23  been raised earlier in the litigation.  *Kona Enters., Inc.*, 229 F.3d at 890.  It does not

24  give parties a "second bite at the apple."  *See Weeks v. Bayer*, 246 F.3d 1231, 1236-

25  37 (9th Cir. 2001).  "[A]fter thoughts" or "shifting of ground" do not constitute an

26  appropriate basis for reconsideration. *Ausmus v. Lexington Ins. Co.*, No. 08-CV-2342-

27  L, 2009 WL 2058549, at *2 (S.D. Cal. July 15, 2009) (Lorenz, J.).

28

## II.    BACKGROUND[1]

Hanson Pacific, Hanson Aggregates, Inc., and Lehigh Hanson Co. (collectively, "Defendants") "are related companies and are all engaged in the business of providing construction concrete, aggregate, ready mix and related materials to contractors engaged in the construction industry."  (ECF No. 41 ("SAC") at ¶ 4.)  The "vast majority of Hanson [Pacific]'s customers are commercial companies that place numerous phone orders for Aggregate or Ready-Mix materials each year." (ECF No. 82-1 at ¶ 2.)  Many of the commercial customers have long-standing business relationships with Hanson Pacific that span many years.  (*Id*.)

Hanson Pacific receives all orders for construction materials through a dedicated telephone line.  (ECF No. 73-3 ¶ 5.)  Prior to July 15, 2009, Hanson Pacific utilized a "Voice Print International" ("VPI") system, which created a recording of every call made to or from the Ready Mix Dispatch or Aggregate Dispatch lines.  (*Id*. at ¶ 10; Mot at p. 4; ECF No. 82-6 ("Barajas Dep.") at 33:12-25.)  While using the VPI system, Hanson Pacific used "beep tone generators" on all of its telephones which received calls routed to its Ready Mix Dispatch or Aggregate Dispatch lines, which produced an audible "beep tone" every fifteen seconds during a call to provide notice to callers that the call was being recorded.  (*Id*. at ¶ 11; ECF No. 88 (Joint Statement of Undisputed Material Fact ("JSUF")) at ¶¶ 1, 2.)  Plaintiff is a contractor and placed numerous orders with Hanson Pacific for construction materials.  (SAC at ¶ 4; JSUF at ¶ 4; ECF No. 82-1 at ¶ 4.)  Hanson Pacific located forty-eight recordings from five of the twenty-eight phone numbers provided by Plaintiff.  (ECF No. 82-1 at ¶ 4.)

On July 15, 2009, Hanson Pacific replaced the VPI system and discontinued its use of the "beep tone generators" and began using "a pre-recorded verbal admonition," which notified inbound callers that their calls "may be monitored for quality

---

[1]    The following background facts are taken from the Order.  (*See* ECF No. 95 at § I.)

assurance." (JSUF at ¶ 5; *see also* ECF No. 73-3 at ¶¶ 13, 14; ECF No. 74-4 at 3-4; ECF No. 74-3 at 6-7; ECF No. 82-1 at ¶ 6.) On or about December 23, 2013, Hanson Pacific updated the verbal admonition to state that calls may be "monitored or recorded for quality assurance purposes." (ECF No. 73-3 at ¶ 17; ECF No. 74-4 at 4.)

Plaintiff contends that Defendants recorded 210,688 calls made by putative class members from cellphones during the Class Period beginning on July 15, 2009 and ending on December 23, 2013. (ECF No. 74-1 ("Mot.") at 3; ECF No. 74-9 ("Hansen Decl.") at ¶ 5.) These calls were allegedly made from 12,551 unique cellphone numbers. (*Id.*; Hansen Decl. at ¶ 5.) Plaintiff seeks to certify a class of 12,551 members with 210,688 claims. (*Id.*)

## III.   DISCUSSION

Plaintiff's Second Amended Complaint ("SAC") alleges Defendants violated California Penal Code section 632.7 ("Section 632.7"), which prohibits the intentional recording of a telephone call involving at least one cellular telephone without the consent of all parties to the call.[2] A person injured under the statute may bring a civil action for damages and injunctive relief against the person who committed the violation. *See* Cal. Penal Code § 637.2. Plaintiff moved for certification of the following class:

> All persons who called Defendant with a cellular telephone and selected the Aggregate or Ready Mix Dispatch lines through Defendant's telephone system, whose calls were recorded by Defendant, during the time period beginning July 15, 2009, and continuing through December 23, 2013.

---

[2]   California Penal Code Section 632.7 states, in relevant part: "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished[.]" Cal. Penal Code § 632.7(a).

(Mot. at 3.)   On March 24, 2015, the Court denied Plaintiff's motion for class certification, appointment of class representative, and class counsel (the "Class Motion") after reviewing the papers submitted and hearing oral argument.  (ECF Nos. 91, 93.)

The Court denied the Class Motion on the grounds Plaintiff failed to establish that common questions of law or fact would predominate as to the issue of consent. (Order at pp. 5-11.)  On the issue of consent, the Court stated:

> Of significance, Hanson Pacific cites two putative class members, Verdugo Concrete Construction, Inc. ("Verdugo") and ARB Construction ("ARB"), as examples of customers who had actual knowledge their calls were being recorded after the switch to the verbal warning, and continued placing orders, thereby evidencing consent. (*Id*. at 8; ECF No. 82-8 (Verdugo), ECF No. 82-9 (ARB).)

(*Id*. at p. 10.)

In the present motion for reconsideration, Plaintiff advises the Court that the recordings of Hanson Pacific's calls with Verdugo and ARB, which Hanson Pacific submitted in support of its opposition to the Class Motion, occurred after the close of the Class Period on December 23, 2013. This date is significant because Hanson Pacific updated the verbal admonition on its phone system to state that calls may be "monitored or recorded for quality assurance purposes" after December 23, 2013. (ECF No. 73-3 at ¶ 17; ECF No. 74-4 at 4.)  Plaintiff asks that the Court reconsider its Order in light of this fact, which Plaintiff claims it learned for the first time during the appeals process.

In response, Hanson Pacific first argues that it did not mislead the Court with respect to the dates of the recordings at issue, as "the dates are plainly stated in the audio file names."  (ECF No. 100 at pp. 4-5.)  Next, Hanson Pacific argues that, regardless, "the dates of the recordings are inconsequential to the thrust of Hanson [Pacific]'s consent defense" as "the three recordings at issue were just a small part amongst a substantial volume of other evidence presented by Hanson [Pacific]" and

not the primary reason this Court found that individual issues of consent would predominate.  (*Id*. at p. 2 at lines 12-25, pp. 4-5.)

### A. Reconsideration

#### 1. Representations Regarding Verdugo and ARB Recordings

Hanson Pacific made the following representations about the Verdugo and ARB recordings to the Court:

> [T]he truth is Verdugo had <u>actual knowledge</u> that Hanson recorded its order phone calls. Attached as Exhibit "4" to Hanson's Notice of Lodgment ("NOL") is a recording of a call from Verdugo to Hanson requesting a copy of the recording of the call be reviewed to ensure the accuracy of an order. . . .  ARB also had <u>actual knowledge</u> of Hanson's call recording. Attached as Exhibit "5" to the Hanson's NOL is a recording of a series of calls between ARB and Hanson discussing a recording of a call.

(ECF No. 82 at p. 19, lines 3-12.)

Whether or not Hanson Pacific intended to mislead the Court, the Court did in fact believe that the ARB and Verdugo recordings were made during the Class Period, and Hanson Pacific did not make any effort to clarify the issue or correct this mistake. Never once did Hanson Pacific state the date of the Verdugo and ARB recordings, or state that the recordings were of calls made after the Class Period ended.

#### 2. Newly Discovered Evidence

Reconsideration is appropriate where the district court is presented with newly discovered evidence.  *See Sch. Dist. No. 1J, Multnomah Cnty.*, 5 F.3d at 1263. Plaintiff argues it was not aware the ARB and Verdugo recordings were dated six months after the Class Period ended until Hanson Pacific's Answer to its Petition for Permission to Appeal to the Ninth Circuit filed April 17, 2015.  (ECF No. 95-1 at pp. 6-7.)  Given the Court's misunderstanding, the Court finds Plaintiff's failure to raise this argument earlier to be excusable and will treat the information as if it were newly discovered evidence, as it was not considered by the Court in its previous Order.  The Court therefore turns to examine whether this new evidence alters its prior conclusion

that individual consent inquiries will be necessary and thus individual inquiries will predominate, thereby defeating class certification.

## B.   Predominance

"The predominance test of Rule 23(b)(3) is far more demanding than the commonality test under Rule 23(a)(2)." *Villalpando v. Exel Direct Inc*., 303 F.R.D. 588, 607 (N.D. Cal. 2014) (quoting *Amchem Prod.'s, Inc. v. Windsor*, 521 U.S. 591, 624 (1997)) (internal quotation marks omitted). "[It] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998)) (internal quotation marks omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Id*. (citation omitted).

Hanson Pacific argues the Court did not place particular importance on the recordings being evidence of actual consent during the Class Period.  Hanson Pacific is mistaken.  On the contrary, the recordings were in fact the primary reason Plaintiff's motion for class certification was denied.  As the Court stated in its Order:

> Of significance, Hanson Pacific cites two putative class members, Verdugo Concrete Construction, Inc. ("Verdugo") and ARB Construction ("ARB"), as examples of customers who had actual knowledge their calls were being recorded after the switch to the verbal warning, and continued placing orders, thereby evidencing consent. (*Id*. at 8; ECF No. 82-8 (Verdugo), ECF No. 82-9 (ARB).)

(Order at p. 10, lines 17-22.)

Without evidence of actual consent during the Class Period, the evidence before the Court on the issue of consent during the Class Period is merely speculative.  It is undisputed that callers did not receive a warning during the Class Period advising them that their call may be recorded.  It is further undisputed that Hanson Pacific had no formal process for advising customers that their calls might be recorded or any

1  formal documentation of consent.  (ECF No. 82-5 at 145:12-20,174:12-24.)

2      In *Steven Ades & Hart Woolery v. Omni  Hotels Management Corp.*, No. 13-

3  cv-02468-CAS(MANx), 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014), the defendant

4  submitted the following evidence in support of its argument that the question of

5  consent will require individual inquiries in a Section 632.7 case: "(1) declarations of

6  putative class members indicating an expectation that calls to Omni or similar

7  companies would be recorded; (2) requests by putative class members that recordings

8  of prior calls be accessed, suggesting awareness that those calls were recorded; and

9  (3) a survey concluding that half of California residents who called 'business class or

10 luxury hotels' within a recent one-year period assumed their calls were recorded." *Id*.

11 at *11.  The court found this information, which is in line with Hanson Pacific's

12 current arguments, to be insufficient.  *Id*. at *12.  Citing *Kearney v. Salomon Smith

13 Barney, Inc.*, 39 Cal. 4th 95 (2006), the *Ades* court found that "evidence that some

14 class members *expected* their calls to be recorded [does not] raise[] predominant issues

15 of consent in the absence of any evidence that [the defendant]—or anyone else—ever

16 notified callers that [the defendant] would record their calls before or at the outset of

17 any call."  *Id*.  The *Ades* court, relying on *United States v. Staves*, 383 F.3d 977, 981

18 (9th Cir. 2004), a wiretapping case finding that "foreseeability of monitoring is

19 insufficient to infer consent," also found that the fact "unidentified callers sometimes

20 asked for previous calls to be accessed, suggesting that they *thought* those calls might

21 have been recorded, does not show that evidence of individual consent to recording

22 will dominate the trial."  *Ades*, 2014 WL 4627271 at *12 (emphasis added).  The *Ades*

23 court ultimately relied on the fact that "[d]espite extensive discovery, [the defendant]

24 has not produced evidence that a single person meeting the class definition actually

25 consented to a call being recorded during the Class Period."  *Id*.

26      This Court distinguished *Ades* and *Kearney* in its order denying class

27 certification.  (*See* Order at p. 11.)  The Court distinguished these cases on the basis

28 that defendants in this case had presented not only evidence of actual knowledge of

– 8 –

recording during the Class Period by at least two putative class members, but evidence demonstrating that these two putative class members continued placing orders with the company on potentially thousands of occasions by telephone, even after becoming aware that the company was recording their calls.  Thus, at least two customers, Verdugo and ARB, were aware at the outset of potentially thousands of calls that they were being recorded and, by continuing to place orders, consented to this recording. This was not the same situation as a customer calling a hotel's customer service line perhaps one time about a hotel reservation.[3]   As the Court stated in its Order, "[t]he district court in [*Ades*] made its holding in a factually different context."  (Order at p. 10, lines 1-2.)

However, this distinguishing factor is no longer before the Court, and therefore the Court's conclusion must change.  Now the Court is presented with little more than expectation or foreseeability arguments.  There is no evidence that a single putative class member actually consented to a call being recorded during the Class Period.[4] Without any evidence of actual knowledge of recording during the Class Period followed by additional calls, and therefore no evidence of consent, the Court must find, in line with *Ades* and *Kearney*, that common questions will predominate.  *See Ades*, 2014 WL 4627271 at *12-13; *Kearney*, 137 P.3d at 117-18, n. 10.  However, as the court stated in *Ades*, Hanson Pacific is in the best position to come forward with

---

[3]      Notably, on this point, during the initial oral argument on Plaintiff's motion for class certification, the Court specifically asked Plaintiff's counsel whether consent could be provided if a person knows they are being recorded, as evidenced by recordings of them asking the company to review the recordings, and continues not only the conversation, but to do business with that company.  Plaintiff's counsel responded that such people should be dealt with after class certification.

[4]      As the Verdugo and ARB recordings are dated six months after Hanson Pacific started advising its customers that it was recording phone calls, the Court does not find the recordings to be particularly relevant, much less indicative of knowledge or consent during the Class Period.  Moreover, the Court does not find the vague testimony by Mr. Woods to be evidence of actual knowledge or consent during the Class Period.

1  evidence of individual consent, and the Court "can of course consider the propriety of

2  class adjudication at a later juncture if such evidence comes to light." *Id.* at *12.

3  **C.     Remaining Class Certification Arguments**

4      Hanson Pacific opposed Plaintiff's motion for class certification on the basis

5  that Plaintiff failed to satisfy Rule 23's predominance requirement, as well as Rule

6  23's numerosity, commonality, ascertainability, adequacy, and superiority

7  requirements.  Because it determined that Plaintiff failed to meet the predominance

8  requirement, the Court did not address Hanson Pacific's remaining arguments in its

9  Order.  Now that the Court has found that Plaintiff has satisfied the predominance

10 requirement, however, it turns to Hanson Pacific's remaining arguments.

11     **1.     Numerosity**

12     Rule 23(a)(1) requires that the class be so numerous that joinder of all members

13 is impracticable.  "[C]ourts generally find that the numerosity factor is satisfied if the

14 class comprises 40 or more members and will find that it has not been satisfied when

15 the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549

16 (N.D. Cal. 2007).

17     Plaintiff's proposed class consists of thousands of members.  Plaintiff claims

18 that 210,688 calls were recorded from 12,551 unique cellphone numbers.  (Mot. at p.

19 10.)  Given the size of the proposed class, the Court finds that joinder of all members

20 is impracticable for the purposes of Rule 23(a)(1) and the numerosity requirement is

21 easily satisfied.

22     **2.     Commonality**

23     Under Rule 23(a)(2), the named plaintiff must demonstrate that there are

24 "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

25 "Commonality requires the plaintiff to demonstrate that the class members 'have

26 suffered the same injury[.]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw.*

27 *v. Falcon*, 457 U.S. 147, 157 (1982)).  However, "[a]ll questions of fact and law need

28 not be common to satisfy this rule."  *Hanlon*, 150 F.3d at 1019.  "The existence of

shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* "What matters to class certification . . . is not the raising of common 'questions' - even in droves - but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551.

Where a plaintiff shows predominance, a more demanding standard, as Plaintiff has here, they necessarily demonstrate commonality. *See Ades*, 2014 WL 4627271, at *8. Accordingly, for the reasons stated above, the Court finds that Rule 23(a)(2) is satisfied.

### 3.  Ascertainability

"[A]part from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). Certification is improper if there is "no definable class." *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007). "A class should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotation marks omitted). "A class is ascertainable if it is defined by 'objective criteria' and if it is 'administratively feasible' to determine whether a particular individual is a member of the class." *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995, at *4 (N.D. Cal. June 23, 2014). However, "[a] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010). "It is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not so daunting as to make the class definition insufficient." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 673 (N.D. Cal. 2011) (internal quotation marks omitted).

– 11 –

Here, Hanson Pacific produced a call list which shows the date, time, and phone number of all recorded calls during the Class Period.  (Opp. at p. 21.)  Using this list, Plaintiff claims that "identification of cellular telephone calls to [Hanson Pacific]'s Dispatch lines is a relatively straightforward matter of comparing commercially available cell block identifier databases to the [l]ist of recorded calls."  (Mot at p. 11.)  Plaintiff claims that a service specializing in reverse cellphone number look-ups can identify owner names and addresses with a success rate as high as 87.78%, and the remaining identities can be determined relatively inexpensively through a call center calling each cellphone number manually.  (*Id*. at p. 12.)

In response, Hanson Pacific argues "the big missing piece is there is <u>no information</u> on the identification of the caller," and therefore, given that the phone may be owned by an employer, rather than by an individual, it will be difficult, if not impossible, to identify the caller.  (*Id*. at pp. 21-23.)  The Court does not find this argument persuasive.  There is nothing to suggest that the owner of the cellular telephone number cannot be identified through the process identified by Plaintiff, whether that owner be a person or a business entity,[5] and that the class definition is not sufficiently definite such that its members can be ascertained by reference to objective criteria.

Hanson Pacific further argues that it must be able to determine the identity of the individual employee on each recording so that it can inquire of each employee whether or not he or she consented to being recorded.  (*Id*. at p. 23.)  Given that Hanson Pacific has presented no actual evidence of consent, this argument, which Hanson Pacific argues is a due process concern, is merely speculative at this point, and does not defeat class certification.  (*See id*. at pp. 19-20.)

Hanson Pacific further argues that the Class is not ascertainable because the

---

[5]    In addition to an individual, a corporation may bring an action under the California Invasion of Privacy Act.  *See Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 879-80 (1980); *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923, 930 (1994).

class definition only covers persons who called Hanson Pacific "with a cellular telephone and selected the Aggregate or Ready Mix Dispatch lines through Defendant's telephone system," and there is no "objective criteria" by which to determine which menu option was selected, or whether the caller was transferred to those lines by a sales agent because Hanson Pacific "does not maintain such records." (*See* Mot. at 3; Opp. at p. 22.) However, the declarations submitted by Hanson Pacific state only that it is impossible to determine from the produced list of numbers whether or not a caller received the pre-recorded monitoring warning. (*See* ECF No. 82-1 at ¶ 7; ECF No. 82-2 at ¶¶ 4-5.) Given that the Court has already determined that the warning was insufficient to provide notice of recording, this potential issue does not affect the ascertainability of the class. (*See* ECF No. 92.) Accordingly, the Court finds that the proposed class is identifiable and ascertainable.

### 4. Adequacy

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Hanson Pacific argues Plaintiff is not an adequate representative because it has unclean hands. (Opp. at pp. 23-24.) Hanson Pacific asserts that Plaintiff brought this "unmerited" class action after it lost a prior action which Hanson Pacific was forced to bring to recover on an unpaid invoice, in which Hanson Pacific's call recordings were determinative. (*Id.* at p. 24.) Thus, Plaintiff brought this action in revenge and its motives are not aligned with other class members. (*Id.*) The Court finds this

argument to lack merit.  There is nothing to suggest Plaintiff and its counsel have any conflict of interest with the other class members or that they will not prosecute the action vigorously on behalf of the class.  Accordingly, the Court finds Plaintiff is an adequate representative of the proposed class.

### 5.  Superiority

A plaintiff "must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (citing Fed. R. Civ. P. 23(b)(3)).  "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).  The following factors are pertinent to this analysis:

(A)  the class members' interest in individually controlling the prosecution or defense of separate actions;

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Where damages suffered by each putative class member are not large, the first factor weighs in favor of certifying a class action.  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).  Here, Plaintiff seeks the statutory remedy provided in California Penal Code section 637.2, which is $5,000 per statutory violation.  The Court does not find this amount to be particularly large.  *See McKenzie v. Fed. Ex. Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011) (finding a $4,000 per class member statutory damages sum to be "not large").

Hanson Pacific argues that in this case, however, the damages for each putative

class member may be significant, noting that "[u]nder Plaintiff's theory, even a relatively small Hanson customer, such as NEI, could recover a significant amount **($240,000)** if recovery is permitted at $5,000 per recorded call."  (Opp. at p. 24 (emphasis in original).)  Yet, Hanson Pacific also submits a declaration stating that while "the vast majority of Hanson [Pacific]'s customers are commercial companies that place numerous orders for Aggregate or Ready-Mix materials each year . . ., the number and size of the orders varies greatly."  (ECF No. 82-1 at ¶ 2.)  "[T]here are hundreds of C.O.D. customers that may be individuals who placed only one order." (*Id*.)  Given that potential recoveries may vary greatly, this factor is at best neutral. Moreover, the Court agrees with the reasoning in *Ades* in which the court, following the Ninth Circuit's reasoning in *Bateman v. Am. Multi-Camera, Inc*., 623 F.3d 708 (9th Cir. 2010), declined "to consider allegedly excessive damages as weighing against superiority" in a California Invasion of Privacy Act case.  *Ades*, 2014 WL 4627271, at *14.

Hanson Pacific further argues that "proceeding as a class is not superior given the myriad individual issues that need to be answered."  (Opp. at p. 25.)  Given the foregoing discussion, the Court does not find that there are a myriad of individual issues that need to be litigated, or that this class action is unmanageable.  As Plaintiff has stated that it is not aware of any other lawsuits against Hanson Pacific commenced by or on behalf of putative class members concerning the claims and issues raised in this action, and Hanson Pacific is located in San Diego, the Court finds that a class action is superior to other methods for fairly and efficiently adjudicating this matter.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for reconsideration of the Court's Order denying class certification (ECF No. 95) and certifies the following class under Federal Rule of Civil Procedure 23(b)(3):

> All persons who called Defendant with a cellular telephone and selected the Aggregate or Ready Mix Dispatch lines through Defendant's

telephone system, whose calls were recorded by Defendant, during the time period beginning July 15, 2009, and continuing through December 23, 2013.

**IT IS SO ORDERED.**

DATED:  **August 18, 2015**

Hon. Cynthia Bashant
United States District Judge