# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEI CONTRACTING AND ENGINEERING, INC., *on behalf of itself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HANSON AGGREGATES, INC., *et al.*,<br><br>Defendants. | Case No. 12-cv-01685-BAS(JLB)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO DECERTIFY THE CLASS; AND**<br><br>**(2) DENYING PLAINTIFF'S MOTION TO STRIKE EVIDENCE SUBMITTED IN SUPPORT OF DEFENDANT'S MOTION TO DECERTIFY THE CLASS**<br><br>**[ECF Nos. 109, 110]** |

## I.     INTRODUCTION

Plaintiff NEI Contracting and Engineering, Inc. brings this class action against Defendants Hanson Aggregates Pacific Southwest, Inc. ("Hanson Pacific"); Hanson Aggregates, Inc.; and Lehigh Hanson Co. alleging violations of California Penal Code Section 632.7. The Court previously certified a class in this matter under Federal Rule of Civil Procedure 23(b)(3). (ECF No. 107.) Hanson Pacific now moves to decertify the class based on evidence not before the Court when it certified the

class. (ECF No. 109.) In response, Plaintiff moves to strike all evidence submitted by Hanson Pacific in support of its motion for decertification. (ECF No. 110.) Both motions are fully briefed.

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d). For the following reasons, the Court **GRANTS** Hanson Pacific's motion to decertify the class and **DENIES** Plaintiff's motion to strike.

## II. BACKGROUND

### A. Hanson Pacific's Call Recording Practice[1]

This case revolves around Hanson Pacific's practice of recording phone calls it receives from customers placing orders for construction materials. Defendants Hanson Pacific; Hanson Aggregates, Inc.; and Lehigh Hanson Co. "are related companies and are all engaged in the business of providing construction concrete, aggregate, ready mix, and related materials to contractors engaged in the construction industry." (ECF No. 41 ¶ 4.) The "vast majority of Hanson [Pacific]'s customers are commercial companies that place numerous phone orders for Aggregate or Ready-Mix materials each year." (ECF No. 82-1 ¶ 2.) Many of the commercial customers have long-standing business relationships with Hanson Pacific that span many years. (*Id.*)

Hanson Pacific receives all orders for certain construction materials through a dedicated telephone line. (ECF No. 73-3 ¶ 5.) Prior to July 15, 2009, Hanson Pacific utilized a "Voice Print International" ("VPI") system, which created a recording of every call made to or from the Ready Mix Dispatch or Aggregate Dispatch lines. (*Id.* ¶ 10; ECF No. 82-6 at 33:12–25.) While using the VPI system, Hanson Pacific used "beep tone generators" on all of its telephones that received calls routed to its Ready

---

[1] The Court largely adopts this background segment from its initial order denying Plaintiff's motion for class certification. (*See* ECF No. 93 at 2:1–3:9.)

1  Mix Dispatch or Aggregate Dispatch lines, which produced an audible "beep tone"
2  every fifteen seconds during a call to provide notice to callers that the call was being
3  recorded. (ECF No. 73-3 ¶ 11; ECF No. 88 ¶¶ 1–2.)
4        On July 15, 2009, Hanson Pacific replaced the VPI system and discontinued
5  its use of the "beep tone generators" and began using "a pre-recorded verbal
6  admonition," which notified inbound callers that their calls "may be monitored for
7  quality assurance." (ECF No. 88 ¶ 5; *see also* ECF No. 73-3 ¶¶ 13–14; ECF No. 74-
8  4 at 9–10; ECF No. 82-1 ¶ 6.) On or about December 23, 2013, Hanson Pacific
9  updated the verbal admonition to state that calls may be "monitored or recorded for
10 quality assurance purposes." (ECF No. 73-3 ¶ 17; ECF No. 74-4 at 10.)
11       Plaintiff is a contractor and placed numerous orders with Hanson Pacific for
12 construction materials. (ECF No. 41 ¶ 4; ECF No. 88 ¶ 4; ECF No. 82-1 ¶ 4.) Plaintiff
13 alleges Hanson Pacific violated California Penal Code Section 632.7 when it
14 recorded cell phone conversations between Plaintiff and Hanson Pacific without
15 Plaintiff's knowledge or consent. (ECF No. 41 ¶ 8.) Hanson Pacific located forty-
16 eight recordings of such conversations with Plaintiff. (ECF No. 82-1 ¶ 4.)
17       Plaintiff alleges Hanson Pacific similarly recorded calls placed by other
18 customers without their knowledge or consent. (ECF No. 41 ¶ 8.) Plaintiff's expert
19 concluded that Hanson Pacific recorded 210,688 calls made by putative class
20 members from cell phones during the class period beginning on July 15, 2009, and
21 ending on December 23, 2013. (ECF No. 74-9 ¶ 5.) These calls were made from
22 12,551 unique cell phone numbers. (*Id.*)
23
24       **B.**    **Plaintiff's Motion for Class Certification**
25       Based on the foregoing, Plaintiff brought a motion for class certification
26 seeking to certify a class of 12,551 members with 210,688 claims. (ECF No. 74-1 at
27 3:3–7.) Plaintiff defined the proposed class as:
28 //

> All persons who called Defendant with a cellular telephone and selected the Aggregate or Ready Mix Dispatch lines through Defendant's telephone system, whose calls were recorded by Defendant, during the time period beginning July 15, 2009, and continuing through December 23, 2013.

(*Id.* at 3:9–12.)

Hanson Pacific opposed Plaintiff's motion by arguing that Federal Rule of Civil Procedure 23(b)(3)'s predominance requirement was not satisfied. (ECF No. 82 at 12–20.) Specifically, Hanson Pacific claimed individual issues would predominate because determining whether each caller had knowledge of or consented to Hanson Pacific's recording practice would require individualized inquiries into the particular circumstances surrounding each caller. (*Id.*) To support this claim, Hanson Pacific represented to the Court that the evidence demonstrated two putative class members had actual knowledge that Hanson Pacific recorded their calls placing orders for construction materials. (*Id.* at 19:3–12.) It discussed these putative class members—Verdugo Concrete Construction, Inc. ("Verdugo") and ARB Construction ("ARB")—in its opposition as follows:

> [T]he truth is Verdugo had <u>actual knowledge</u> that Hanson recorded its order phone calls. Attached as Exhibit "4" to Hanson's Notice of Lodgment ("NOL") is a recording of a call from Verdugo to Hanson requesting a copy of the recording of the call be reviewed to ensure the accuracy of an order . . . . ARB also had <u>actual knowledge</u> of Hanson's call recording. Attached as Exhibit "5" to the Hanson's NOL is a recording of a series of calls between ARB and Hanson discussing a recording of a call.

(*Id.*)

The Court, after hearing oral argument, ultimately found that the predominance requirement was not satisfied. (ECF No. 93 at 11:7–9.) The Court noted:

//

//

> Of significance, Hanson Pacific cites two putative class members, [Verdugo] and [ARB], as examples of customers who had actual knowledge their calls were being recorded after the switch to the verbal warning, and continued placing orders, thereby evidencing consent.

(*Id.* at 10:17–21.) Thus, given the Court's understanding that the evidence substantiated Hanson Pacific's claim that individualized inquiries would be necessary to resolve the issue of consent, the Court concluded common questions of law or fact would not predominate and denied class certification. (*Id.* at 11:7–9.)

### C. Plaintiff's Motion for Reconsideration

Less than one month after the Court issued its order denying class certification, Plaintiff filed a motion for reconsideration advising the Court that the recordings of Hanson Pacific's phone conversations with putative class members Verdugo and ARB demonstrating actual knowledge did not occur during the proposed class period. (ECF No. 95.) Rather, the recordings submitted by Hanson Pacific occurred after Hanson Pacific updated the verbal admonition on its phone system to state that calls may be "monitored or recorded for quality assurance purposes." (*Id.* at 2:2–7.) Hanson Pacific therefore had not in fact demonstrated that any putative class members continued to place phone orders during the class period despite their knowledge of Hanson Pacific's recording practice. (*Id.* at 8:1–3.)

Confronted with this revelation, the Court reconsidered whether class certification was appropriate. (ECF No. 107.) Without "any evidence of actual knowledge of recording" during the class period, the Court found common issues will predominate. (*Id.* at 9:11–18.) It also found the other prerequisites for class certification were satisfied and certified the class proposed by Plaintiff. (*Id.* at 15:27–16:3.) The Court noted, however, that "Hanson Pacific is in the best position to come forward with evidence of individual consent, and the Court 'can of course consider the propriety of class adjudication at a later juncture if such evidence comes to light.'"

(*Id.* at 9:18–10:2 (quoting *Steven Ades & Hart Woolery v. Omni Hotels Management Corp.*, No. 13-cv-02468-CAS(MANx), 2014 WL 4627271, at *12 (C.D. Cal. Sept. 8, 2014)).)

### D. Evidence Offered in Support of Decertification

Hanson Pacific responded to the Court's decision to certify a class by undertaking an effort to unearth evidence indicating class members consented to Hanson Pacific's recording practice during the class period. (ECF No. 109-2 ¶ 2.) It retained a third-party litigation forensic support company that, in conjunction with Hanson Pacific counsel's information technology support staff, spent more than fifty hours collecting recordings and data. (*Id.* ¶ 5.) Hanson Pacific's counsel then spent 236.2 hours reviewing the recordings and data collected. (*Id.*) This process was time consuming because the recordings are organized by only date, time, and phone number—a particular recording is not associated with the name of the customer who called to place an order. (*Id.* ¶ 4; ECF No. 82-1 ¶ 3; ECF No. 82-2 at 113:19–116:2.) Thus, short of listening to each recording, there is no means through which Hanson Pacific can conclusively identify the customer or individual caller. (ECF No. 82-2 ¶ 3.)

Based on these efforts, Hanson Pacific supports its motion to decertify the class with nine examples of customers who had actual knowledge of Hanson Pacific's recording practice during the class period prior to placing additional orders with Hanson Pacific. (ECF No. 109-1 at 8:15–12:5; ECF 109-3 ¶¶ 2–10; ECF Nos. 109-4 to 109-13.) One example is a recording of a conversation between class member Verdugo Concrete Construction, Inc.'s presumed principal—Albert Verdugo—and a Hanson Pacific employee dated November 12, 2012. (ECF No. 109-5.) Mr. Verdugo calls Hanson Pacific to discuss an order placed for delivery of concrete to a jobsite. (*Id.* at 00:00–00:38.) A disagreement unfolds as to the exact amount of concrete ordered in a previous call. (*Id.* at 00:39–2:13.) When the disagreement is not resolved

1 by reviewing the order's details, Hanson Pacific's employee states multiple times that they need to review the recording of the order call to discern the exact amount of concrete ordered, which is followed by Mr. Verdugo's acknowledgement. (*Id.* at 3:39–3:45, 4:34–4:46.) Verdugo placed 358 additional orders with Hanson Pacific from the date of this call to the end of the class period on December 23, 2013. (ECF No. 109-3 ¶ 2.)

In another example, a payment dispute arises after class member Shimmick Construction refuses to accept a concrete delivery at a jobsite on the basis that the order was two hours early. (ECF No. 109-8.) Hanson Pacific's representative responds by retrieving three recordings demonstrating the delivery was made at the time requested. (*Id.*) The representative then sends these recordings via e-mail to Shimmick Construction with a request to pay the outstanding invoice. (*Id.*) Shimmick Construction's employee thanks the representative for "pulling the calls" and agrees to process the disputed invoice. (*Id.*) Shimmick Construction thereafter placed forty-five additional orders with Hanson pacific before the end of the class period. (ECF No. 109-3 ¶ 5.)

The remaining seven examples discovered by Hanson Pacific demonstrate other varying circumstances where Hanson Pacific customers appear to have actual knowledge of Hanson Pacific's recording practice prior to placing additional orders during the class period. (ECF Nos. 109-6 to 109-7, 109-9 to 109-13.) Hanson Pacific seeks decertification of the class based on this evidence on the grounds that individual inquiries regarding liability, including whether a customer consented to or had knowledge of Hanson Pacific's recording practice prior to placing calls during the class period, will predominate. (ECF No. 109-1 at 23:10–26.)

//
//
//
//

## III. DISCUSSION

### A. Motion to Strike

At the threshold, Plaintiff moves to strike all of the evidence submitted in support of Hanson Pacific's decertification motion pursuant to Federal Rule of Civil Procedure 37(c)(1). (ECF No. 110 at 1:1–5.) Plaintiff makes this request based on Hanson Pacific's failure to disclose this evidence prior to a discovery deadline set by a scheduling order. (*Id.* at 1:6–9.)

Rule 26 governs a party's duty to disclose information, including its obligation to supplement its initial disclosures and discovery responses if the party discovers they are incomplete or incorrect. Fed. R. Civ. P. 26(a), (e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001). "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir.2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir.2003)). The party facing exclusion of evidence has the burden of showing that the failure to comply with Rule 26(a) or (e) was substantially justified or harmless. *Yeti by Molly, Ltd.*, 259 F.3d at 1107.

Here, the parties present lengthy and competing narratives of how the discovery process unfolded in this case as it progressed through three magistrate judges and three district judges since its filing in 2012. These narratives are inundated

with disagreements over issues as broad as the scope of discovery in this action and whether discovery was bifurcated to allow for separate discovery on the prerequisites for class certification and the merits of class members' claims. The Court need not address each of these disputes, however, because they are immaterial if the Court ultimately concludes Hanson Pacific's claimed failure to comply with Rule 26(a) and (e) was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

In making this determination, the Court initially finds there is no surprise to Plaintiff that Hanson Pacific has supplemented its disclosures with the specific evidence at issue in these related motions. Hanson Pacific's person most knowledgeable designated under Rule 30(b)(6)—Matthew Woods—testified that there was no documented process for advising customers of Hanson Pacific's recording practice beyond the verbal admonition that calls may be monitored for quality assurance. (ECF No. 82-5 at 145:12–20.) He also testified, however, that there were instances where customers discussed recordings with Hanson Pacific or received them by e-mail. (ECF No. 82-5 at 145:21–25 ("[W]e would let them know at that point that we're going to go back and listen to the recording."); 175:3–6 ("There are instances where we have sent calls to customers. And they know that the calls are being monitored. They have received even the calls in some instances via e-mail.")

In addition, although this evidence was not previously produced, Hanson Pacific has demonstrated why locating this evidence was burdensome and time consuming. It also appears there was a good faith dispute between the parties as to whether Hanson Pacific had to locate and produce all of this type of evidence in response to Plaintiff's broad discovery requests. Thus, the Court finds Hanson Pacific did not act in bad faith in not previously locating this evidence. Moreover, the Court in its order certifying the class stated it would possibly reassess the propriety of class adjudication if this type of evidence came to light.

1  On balance, the Court finds that even if Hanson Pacific failed to properly
2  disclose the information submitted in support of its motion to decertify the class as
3  required by Rule 26(a) or (e), this failure was substantially justified given the
4  circumstances of this case. Accordingly, the Court denies Plaintiff's motion to strike.

### B. Motion to Decertify Class

Hanson Pacific moves to decertify the class primarily on the basis that its additional evidence demonstrates Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement are not satisfied.

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Thus, "before entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative." *Officers For Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978). The Ninth Circuit has recognized that this rule "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2011), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). "[A] district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify. 'Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.'" *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO,CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Consequently, "[a] district court may decertify a class at any time." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (citing *Falcon*, 457 U.S. at 160).

In evaluating whether to decertify the class, the court applies the same standard used in deciding whether to certify the class initially. *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000). Thus, a motion to decertify a class is not governed by the standard applied to motions for reconsideration, and does not depend on a showing of new law, new facts, or procedural developments after the original decision. *Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 593 n.6 (E.D. Cal. 1999) ("Because the court has the power to alter or amend the previous class certification order under Rule 23(c)(1), the court need not consider whether 'reconsideration' is also warranted under Fed. R. Civ. P. 60(b) or [local rules governing reconsideration]."); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 652 (C.D. Cal. 2000) ("Because Defendants' motion assists the Court in performing its role as gatekeeper, or manager, of the class action, the motion should not be denied on the ground that it impermissibly recounts old facts and law. . . .").

Indeed, "[u]nder Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983). And the court must decertify a class if the requirements for class certification under Rule 23 are not met. *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007); *Slaven*, 190 F.R.D. at 651; *accord Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999).

"Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008) (citing Fed. R. Civ. P. 23(a)). One or more of the grounds for maintaining

a class action under Rule 23(b) must also be satisfied, which are "(1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id.* (citing Fed. R. Civ. P. 23(b)).

Here, because the Court finds Rule 23(b)(3)'s predominance requirement is dispositive, the Court does not address the remaining requirements for class adjudication.

### 1.     Predominance

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The focus of the inquiry is not the presence or absence of commonality as it is under Rule 23(a)(2). Instead, the predominance requirement ensures that common questions "present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at 1022; *see also Vinole*, 571 F.3d at 944 ("[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.")

The Court discussed at length in its initial order denying class certification several decisions involving the predominance requirement and either Section 632 or Section 632.7 of the California Penal Code. (ECF No. 93 at 5:25–10:11 (discussing *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013), *Ades & Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13–cv–02468, 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014), *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006), and *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014)).) California Penal Code Sections

632 and 632.7 similarly prohibit the recording of a telephone call without consent, albeit with some distinctions including that section 632.7 prohibits recording only if the call includes a "confidential communication." *See* Cal. Penal Code §§ 632, 632.7; *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002) (discussing confidential communication requirement of section 632).

To summarize the decisions discussed by the Court, *Torres* demonstrates that whether class members "consented to the recordings" may "require a detailed factual inquiry for each class member, likely resulting in varying responses to the consent issue" and making class certification inappropriate. 289 F.R.D. at 594–95; *see also CashCall*, 231 Cal. App. 4th at 129–31 (holding in the context of a section 632 claim that individualized inquiries would be necessary to resolve whether callers reasonably expected their communications were confidential). In contrast, *Ades* indicates that the predominance requirement may be satisfied in a section 632.7 action where the defendant failed to provide any type of warning to its customers that their calls would be recorded. 2014 WL 4627271, at *1–*2.

Here, the Court is confronted with nine examples of Hanson Pacific customers who apparently had actual knowledge of the entity's call recording practice, yet continued to place orders with Hanson Pacific before the end of the class period, thereby evidencing a form of consent. The Court also notes, as it did in its initial order concerning class certification, the "vast majority of Hanson [Pacific]'s customers are commercial companies that place numerous phone orders for Aggregate or Ready-Mix materials each year," with many of them having long-standing business relationships with Hanson Pacific spanning many years." (ECF No. 82-1 ¶ 2.) A customer's potential long-standing relationship with Hanson Pacific may influence the issue of consent because Hanson Pacific provided sufficient notice of its recording practice for a period of at least seven years before switching to the verbal admonition at issue in this case. (ECF No. 73-3 ¶ 5.)

When combined, this evidence demonstrates that individualized inquiries will be necessary to determine whether Hanson Pacific recorded calls "without the consent of all parties." *See* Cal. Penal Code § 632.7. The examples discussed above involving class members Verdugo and Shimmick Construction illustrate the type and number of individualized inquiries that may be necessary to resolve this issue, including whether the customer was exposed to Hanson Pacific's beep tone warnings prior to the class period, whether the customer discussed the recording practice with Hanson Pacific, whether the customer received copies of recordings from Hanson Pacific incident to their business relationship, and whether the customer continued to place orders by phone during the class period after one or more of the foregoing occurred.

Notwithstanding the additional evidence before the Court, Plaintiff maintains decertifying the class is not warranted for several reasons. First, Plaintiff argues that if there is evidence of consent for any of Hanson Pacific's customers, these customers "can be purged from the Class List or a subclass can be created for them." (ECF No. 114 at 13:16–19.) The Court finds this solution impracticable, however, as significant individual inquiries will still be necessary to accomplish this task—making it doubtful there is "clear justification" for resolving these issues on a representative basis. *See Hanlon*, 150 F.3d at 1022.

Plaintiff also claims decertification is inappropriate because Hanson Pacific is not entitled to inquire into whether each class member "knew about or consented to being recorded." (ECF No. 114 at 14:24–15:7.) This claim is unpersuasive because Hanson Pacific has "the right to litigate the issue of each class member's consent." *See CashCall*, 231 Cal. App. 4th at 132 (noting defendant's right to litigate both consent and confidential communication issues in class action brought under California Penal Code Section 632).

Last, Plaintiff urges the Court to follow *Ades*, where the court found the predominance requirement was satisfied, and distinguish both *Torres* and *CashCall*,

1  where the courts reached the opposite result. (ECF No. 114 at 20–25.) Yet, upon
2  consideration of the evidence submitted in support of Hanson Pacific's motion for
3  decertification, the Court finds *Ades* to be distinguishable for the same reasons
4  expressed in its initial order denying certification. (*See* ECF No. 93 at 10:1–11
5  (distinguishing *Ades* because the defendant in *Ades* never provided a warning to
6  callers and did not produce evidence that a single putative class member consented
7  to a call being recorded during the class period).)

8        In sum, given the specific factual circumstances in this case, the Court finds
9  that individual inquiries into whether each class member provided consent will be
10 necessary, and the Court also finds that these inquiries will predominate over
11 questions of law or fact common to class members. *See Torres*, 289 F.R.D. at 591–
12 92. Accordingly, Rule 23(b)(3)'s predominance requirement is not satisfied and this
13 action cannot continue as a class action. The Court therefore grants Hanson Pacific's
14 motion and decertifies the class.

16 **IV.  CONCLUSION**
17       For the foregoing reasons, the Court **GRANTS** Hanson Pacific's motion to
18 decertify the class (ECF No. 109) and **DENIES** Plaintiff's motion to strike (ECF No.
19 110).
20       **IT IS SO ORDERED.**

22 **DATED: May 5, 2016**

                                                        Hon. Cynthia Bashant
                                                        United States District Judge