UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEI CONTRACTING AND ENGINEERING, INC., <br><br> Plaintiff, <br><br> v. <br><br> HANSON AGGREGATES PACIFIC SOUTHWEST, INC., <br><br> Defendant. | Case No. 12-cv-01685-BAS(JLB) <br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I.  INTRODUCTION

NEI Contracting and Engineering, Inc. ("NEI") filed this case pursuant to the Class Action Fairness Act alleging Hanson Aggregates Pacific Southwest, Inc. ("Hanson") unlawfully recorded and intercepted cellular telephone communications pursuant to California Penal Code Section 632.7 and requesting injunctive relief pursuant to California Penal Code Section 637.2(b).  (Second Amended Complaint ("SAC"), ECF No. 41.)

The Court denied Hanson's Motion for Summary Judgment, finding that Hanson's warning to callers that it was "monitoring" calls is different than the fact that it was "recording" calls.  (ECF No. 92.)  However, the Court also denied NEI's Motion for Class Certification, finding that individual inquiries regarding the consent

to record defeated the predominance requirement under Federal Rule of Civil Procedure 23(b)(3). (ECF No. 119).[1]

Pursuant to a motion *in limine* filed by NEI, the Court ruled that NEI could potentially recover $5000 for every one of the forty-four calls Hanson allegedly recorded without NEI's consent. However, the morning of trial, NEI informed the Court and Hanson that it would only be proceeding on one telephone call between NEI's principal Eric Barajas and Hanson on November 21, 2011, and would, therefore, only be seeking damages of $5,000 along with the requested injunctive relief.

The parties orally waived their right to a jury and proceeded by way of bench trial.

## II. **FINDINGS OF FACT**

The Court makes the following factual findings based on the testimony and other evidence adduced at trial:

1. Hanson is a company that sells crushed aggregates, ready-mix concrete, and soil amendments. The also company has an asphalt recycling business.
2. NEI is a general contractor that has purchased concrete products from Hanson since at least 2002.
3. Eric Barajas has been the owner and president of NEI since 1994.

---

[1] The Court initially denied the Motion for Class Certification, finding that Hanson had shown that some of the members of the class knew they were being recorded and thus consented to the recording. (ECF No. 93.) NEI later filed a Motion for Reconsideration of the Court's Order Denying Class Certification, pointing out that Hanson had misled the Court when it gave examples of customers who knew they were being recorded, because none of these recordings occurred during the class period. (ECF No. 95.) On this basis, the Court granted the Motion for Reconsideration and certified the class. (ECF No. 107). Hanson then filed a Motion to Decertify the Class, providing additional examples of customers who knew they were being recorded and were recorded during the class period. (ECF No. 109.) The Court granted the motion and decertified the class. (ECF No. 119).

4. Various NEI employees including Rich Degraffenreid, Sandy LeFever, and Charles Alexander had authority to and did place orders with Hanson on behalf of NEI from job sites using their cell phones.

A. **Billing Dispute**

5. In 2011, NEI placed orders with Hanson in conjunction with its work on the Miramar solar carports project. Mr. Degraffenreid was the superintendent on the project. He, Mr. Alexander, and Mr. LeFever all had authority to place orders in conjunction with this project.

6. None of these individuals was required to keep records of the orders they placed.

7. The original estimate for the project was 100 cubic yards of concrete. In fact, however, the project used over 600 cubic yards of concrete. Hanson thus billed NEI for this higher amount of concrete.

8. Mr. Barajas, who was reviewing the Hanson invoices for the project, thought the bill was too high. He did not make inquiry of any of his employees who placed the orders whether the bills were correct or not. Instead, he requested proof from Hanson that the orders belonged to NEI.

9. Hanson provided copies of the original invoices, but Mr. Barajas still disputed the bill and requested proof that the amount of concrete billed was actually delivered to NEI.

10. Hanson then provided copies of the delivery tickets for this concrete. The delivery tickets were signed by NEI employees at the scene who accepted delivery of the concrete. However, many of the signatures were illegible so Mr. Barajas refused to pay the charges.

11. Mr. Barajas did not ask any of his employees including Mr. Degraffenreid, Mr. Alexander, or Mr. LeFever if any of them had placed these orders before refusing to pay the invoices.

12. Hanson responded by filing a lawsuit against NEI and its bond company on December 8, 2011, seeking approximately $66,266.98, plus costs and fees, for unpaid invoices.

13. Mr. Barajas responded that the concrete billed by Hanson could not have been concrete for the Miramar solar carport project because the project did not require the particular strength of concrete being billed.

14. In response to this concern, on March 8, 2011, Hanson produced to NEI recorded telephone calls it had made with NEI employees showing that NEI had ordered this particular strength of concrete for the project.

15. In May 2012, Mr. Barajas settled the case on behalf of NEI and paid the amount invoiced. Hanson agreed to waive any attorneys' fees or interest requested.

16. NEI filed the current lawsuit against Hanson on July 6, 2012.

**B.  Recording**

17. Hanson received orders for ready-mix concrete and aggregate materials through its dedicated telephone order line. The order line connected callers to an automated call directory system. A caller was presented with numerous customer service options including dispatch, sales, specifications, admin, or billing.

18. Hanson recorded all calls that came into its dispatch lines. The dispatch lines were used when a customer actually placed an order. Before the order was placed, the customer generally spoke with sales and specifications departments to determine what was needed and the

pricing of the order.  None of these calls, nor calls to admin or billing, were recorded.  Only calls to dispatch were recorded.

19. Prior to July 15, 2009, Hanson used a Voice Print International ("VPI") phone system.  While the VPI system was in place, Hanson used "beep tone generators" on all of its telephones that received calls to the dispatch lines.  The beep tone generators qualified as notice of recording.

20. Frequently Hanson customers would ask about the beep tone generator and were told that it provided notice that the calls were being monitored or recorded.

21. NEI employees placed orders for ready-mix concrete and/or aggregate through Hanson's dispatch lines prior to July 15, 2009, and heard the audible beep tones generated by Hanson's beep tone generators.

22. Thus, prior to July 15, 2009, NEI knew it was being recorded when its employees called the Hanson dispatch lines and thus consented to the recording.

23. In July 2009, Hanson replaced its VPI system with an Oaisys Talkument phone system.  As part of this phone system, Hanson included a pre-recorded verbal admonition to any customers calling through the dispatch lines which stated that the call "may be monitored for quality assurance."

24. Some Hanson customers, both before and after July 2009, called Hanson and asked to review recordings of calls placed to the dispatch lines to resolve issues pertaining to orders.  These customers knew and consented to the recording of their calls.

25. In 2011, while the Miramar solar carports project was underway, most of NEI's calls (42 out of 44) to the dispatch lines were made by NEI employees other than Mr. Barajas.

26. However, on November 21, 2011, Mr. Barajas called the Hanson dispatch lines. He heard the admonition but interpreted this to mean that someone might be listening in on the telephone calls but not that the telephone call would be recorded.

27. In fact, the telephone call was recorded.

28. Mr. Barajas never spoke with his employees to ask if they knew they were being recorded or consented to the recording on behalf of NEI.

29. Mr. Barajas has no objection to the fact that he was being recorded. If he had been informed that the call was going to be recorded, he would have consented to the recording.

30. It is common practice in the concrete business for calls placing orders to be recorded because the ordering process is so complicated.

31. The only harm claimed by Mr. Barajas from the single recorded telephone call is that, if he had known the telephone calls from NEI were being recorded, he could have requested a copy of the recordings sooner and resolved the billing dispute with NEI short of a lawsuit.

32. As a result of this lawsuit, Hanson has now changed its admonition so that customers calling the dispatch lines are told that the call "may be monitored *or recorded* for quality purposes."

### III. CONCLUSIONS OF LAW

#### A. CIPA

Under California's Invasion of Privacy Act ("CIPA"), California Penal Code Section 632.7, NEI must prove by a preponderance of evidence: (1) that Hanson recorded a call with NEI, (2) that one of the parties to the recorded call was using a cell phone, and (3) that NEI did not consent to the recording. *See* Cal. Penal Code § 632.7. "Any person who has been injured" as a result of this invasion of privacy "may bring an action . . . for the greater of the following amounts: (1) Five thousand

dollars ($5,000), [or] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." *Id.* § 637.2. And the person may simultaneously request injunctive relief. *Id.*

"Consent may be express or may be implied in fact from the 'surrounding circumstances indicating that [the party to the call] knowingly agreed to the surveillance.'" *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) (quoting *United States v. Amen*, 831 F.2d 373, 378 (2nd Cir. 1987)) (applying consent exception to 18 U.S.C. § 2511); *see also Griggs-Ryan v. Smith*, 904 F.2d 112, 116–17 (1st Cir. 1990) (holding safe harbor of consent is not only for those who intercept calls with the explicit consent of the conversant but also for those who do so after receiving implied consent). The critical question is whether the party whose communications were intercepted had adequate notice of the interception. *Campbell v. Facebook*, 77 F. Supp. 3d 836, 846–48 (N.D. Cal. 2014). In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system after receiving notice the communications are being intercepted. *See Negro v. Superior Court*, 230 Cal. App. 4th 879, 892 (2014). "In the absence of such notice, 'the surrounding circumstances must convincingly show that the party knew about and consented to the interception in spite of the lack of formal notice or deficient formal notice.'" *Id.* (quoting *Walden vi City of Providence*, 495 F. Supp. 2d 245, 262 (D.R.I. 2007)).

The recording of a confidential communication is intentional if the person using the recording equipment does so with the purpose or desire of recording the confidential communication, or with the knowledge to a substantial certainty that the use of the equipment will result in the recording of such a conversation. *Marich v. MGM/UA Telecomms., Inc.*, 113 Cal. App. 4th 415, 421 (2003).

Here, there is no question that Hanson intentionally recorded NEI's cellular telephone call on November 21, 2011. The question is whether NEI has proved that it did not consent to the recording. Although Mr. Barajas testified that he did not

personally consent to Hanson's recording of his call, this case is filed on behalf of NEI—not Mr. Barajas. Thus, the Court must look at all the surrounding circumstances involving NEI's telephone communications with Hanson.

Before July 2009, the beep tone generator in the VPI system gave NEI notice that Hanson was recording its telephone calls. Despite this notice, NEI continued to place orders with Hanson. Therefore, prior to July 2009, NEI consented to having its telephone calls recorded.

After July 2009, the Court has very little information about what NEI knew. Mr. Barajas was generally not the employee who called the dispatch lines. In conjunction with the Miramar solar carports project, the dispatch lines were called primarily by Mr. Degraffenreid, Mr. LeFever, and Mr. Alexander. Each of these individuals would have heard the admonition that the calls were being monitored for quality purposes. NEI provides no information about whether these employees knew or agreed on behalf of NEI to have their telephone calls recorded. Mr. Barajas does not dispute that he would have consented to the recording if he had known Hanson was doing so. Presumably his employees would have done the same. Mr. Barajas has never asked his employees if they consented to the recording or if they knew the calls were being recorded to ensure the orders were correct. Although Mr. Barajas claims he did not interpret the admonition to mean the calls were being recorded, in light of the long history of recording and the fact that Mr. Barajas was generally not the individual who called the dispatch lines, NEI has failed to meet its burden to show that NEI did not consent to the taping of the November 21, 2011, telephone call. Consent is dependent on all the factors leading up to the telephone call, and NEI cannot avoid this by attempting to limit all testimony to one single telephone call. Because it has failed to prove a lack of consent, its claim under CIPA must fail. *See* Cal. Penal Code § 632.7.

//

//

### B. Standing

CIPA specifically provides that "[i]t is not a necessary prerequisite to an action . . . that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(c). However, in order to establish Article III standing, although it need not show actual damages, NEI must show that it "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *See Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"For the injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1549. A concrete injury need not be a tangible injury, but it must actually exist. *Id.* It must be real and not abstract. *Id.* at 1548. The court must ask whether the "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 1549.

"[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any *additional* harm beyond the one [the legislature] has identified." *See id.* However, a plaintiff does not automatically satisfy the injury requirement whenever a statute grants a right and purports to authorize a suit to vindicate it. *Id.* "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

In *Bona Fide Conglomerate Inc. v. SourceAmerica*, No. 14-cv-751-GPC-DHB, 2016 WL 3543699 (S.D. Cal. June 29, 2016), the court found that a violation of CIPA may very well fall within the violations of procedural rights granted by statute sufficient in some circumstances to constitute injury in fact and to which a plaintiff need not allege actual harm beyond the invasion of that private right. *Id.* at *8. However, the court concluded that, in the particular factual context of that case, there were sufficient allegations of injury to establish standing without relying solely

on the statute. *Id.*

In this case, Mr. Barajas claims NEI was injured, not by the recording of his telephone call—in fact, he admits he would have consented to the recording—but by the fact that he was not notified of the recording sooner. Mr. Barajas does not object to the existence of the recorded call—in fact, it helped to resolve the billing dispute. Instead, he claims he was injured because the recording was not provided to him sooner in the dispute. Thus, Mr. Barajas is not claiming an injury from the invasion of privacy, he is claiming an injury because he did not keep records of the concrete NEI ordered, did not ask his employees about the concrete ordered, and instead relied solely on Hanson to provide proof of the concrete ordered, which they—according to him—did not do in a timely fashion. This is not the injury CIPA was designed to protect.

Additionally, the Court has concerns about Mr. Barajas's credibility on this issue given the fact that in pre-trial discovery, he claimed that he had suffered no injury and was relying solely on the statutory damages for recovery. Thus, even if Hanson violated CIPA, the Court finds that NEI has not suffered a concrete or particularized injury by the violation. Accordingly, NEI lacks standing to pursue its claim under CIPA in this Court. *See Spokeo*, 136 S. Ct. 1540 at 1547; *see also Lujan*, 504 U.S. at 559–61.

### C. <u>Injunctive Relief</u>

NEI seeks not only $5,000 in statutory damages but also injunctive relief. Although Hanson, after this lawsuit was filed, changed the admonition on its dispatch lines to say "This call may be monitored or recorded for quality assurance," NEI claims this is insufficient. Instead, it requests that the court order Hanson to admonish all callers to the dispatch lines that "This call may be monitored and *will be recorded* for quality assurance" because, in fact, Hanson records *all* calls coming into the dispatch lines.

A plaintiff pursuing injunctive relief must demonstrate, in addition to the traditional elements of standing, a "real and immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The plaintiff must also show a "sufficient causal connection" between the alleged injury and the conduct the plaintiff seeks to enjoin such that the injunction would effectively minimize the risk of injury. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2001).

In this case, NEI lacks standing to seek injunctive relief. First, NEI has failed to show a real and immediate threat that it will be wronged again. There is no chance that NEI will order from Hanson on the dispatch lines again. Furthermore, even if NEI did order on the dispatch lines, NEI would know, and thus impliedly consent, that its telephone call would be recorded. Adding the requested language to the Hanson admonition would not minimize the risk of any future injury to NEI. Thus, injunctive relief is not appropriate.

## IV. CONCLUSION

Because NEI has failed to show that Hanson recorded the November 21, 2011, call without NEI's consent, and because NEI has failed to establish standing to pursue its CIPA claim or seek injunctive relief, judgment is entered in favor of Hanson and against NEI. Further, the Court terminates as moot NEI's *ex parte* application to file supplemental briefing (ECF No. 179).

**IT IS SO ORDERED.**

**DATED: September 15, 2016**

Hon. Cynthia Bashant
United States District Judge